LAURIE E. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket Nos. 11534-77, 1910-79, 8896-79.
United States Tax Court
T.C. Memo 1984-598; 1984 Tax Ct. Memo LEXIS 72; 49 T.C.M. (CCH) 81; T.C.M. (RIA) 84598; November 19, 1984. Laurie E. Johnson, pro se. Albert B. Kerkhove, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: In these consolidated cases, [1] respondent determined deficiencies in petitioner's Federal income taxes as follows: Taxable Year
Deficiency
1974
$2,110.28
1975
2,195.62
1976
2,215.70
After concessions by both parties, [2] the issues for decision are: (1) Whether petitioner may deduct on his 1974, 1975, and 1976 individual returns certain purported expenditures related to the business of Sturdevant Auto Parts, a partnership *74 in which he held a 25 percent interest. (2) Whether petitioner is entitled to a medical expense deduction for 1974 in an amount greater than that allowed by respondent. (3) Whether petitioner is entitled to an interest expense deduction for 1975. [3]
*75 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, second supplemental stipulation of facts, and exhibits attached thereto are incorporated herein by this reference. Laurie E. Johnson (petitioner) resided in Flandreau, South Dakota, at the time he filed his petitions herein. Petitioner and his wife, Delores M. Johnson, timely filed joint Federal income tax returns (Forms 1040) for the taxable years 1974, 1975, and 1976 with the Internal Revenue Service Center in Ogden, Utah. I. Partnership Related Expenses
A. The Partnership
On August 10, 1966, petitioner entered into a agreement (the partnership agreement) with Sturdevant's Incorporated (Sturdevant, Inc.), a Minnesota corporation, to form a partnership known as Sturdevant Auto Parts of Flandreau, South Dakota (the partnership or the Flandreau partnership). Under the partnership agreement, the partners' relative interests in the capital and profits and losses of the partnership were 25 percent for petitioner and 75 percent for Sturdevant, Inc. The partnership agreement contained no provision as to how the expenses *76 of the partnership were to be paid, but profits and losses were to be shared in accordance with the percentage of capital contributed. During the taxable years in issue, the partnership was engaged in the business of selling auto parts and supplies. The partnership conducted its business from a store located at 105 N. Crescent, Flandreau, South Dakota (the Flandreau store). Petitioner's duties as a member of the partnership involved management of the Flandreau store. Generally, he was in the store from 8:00 a.m. until 5:00 or 5:30 p.m., Monday through Friday, and from 8:00 a.m. until 12:00 noon on Saturdays. During those hours, petitioner took orders for auto parts and supplies from customers who came into the store. After taking the orders, petitioner telephoned the orders to a larger auto parts store operated by Sturdevant, Inc., in Pipestone, Minnesota (the Pipestone store). The orders were then filled at the Pipestone store and delivered by a delivery truck owned by Sturdevant, Inc. [4] At the end of each business day, petitioner sent his sales tickets for that day to Sturdevant, Inc.'s central accounting office. *77 Sturdevant, Inc., in partnership with other individuals, also operated 16 other auto parts stores similar to, and with the same general scope and size of business as, the Flandreau store. These other stores operated under the same type of arrangement and in the same manner as the Flandreau store. Sturdevant, Inc., did not, as a routine business practice, offer immediate ("hot-shot") or special delivery service to or for customers of the partnership or customers of any of the other auto parts store partnerships in which Sturdevant, Inc., had an interest. Jack Sturdevant (Mr. Sturdevant), the president of Sturdevant, Inc., believed that the stores were operating successfully and profitably without such delivery services. During the early years of his partnership arrangement and possibly during the taxable years in issue, petitioner believed that his partnership's profit potential could be enhanced if the Flandreau store provided special delivery and pick-up services for its customers. In furtherance of his belief, petitioner may have sometimes engaged various members of his family to make special pick-ups from the Pipestone store and special deliveries to his customers. *78 [5] There is no probative evidence in the record as to the frequency of such pick-ups and deliveries or as to any expense incurred for this service during the years before the Court. Additionally, various members of petitioner's family sometimes helped petitioner provide counter sales service to walk-in customers at the store. See footnote 5. At petitioner's request, none of his relatives were ever officially placed on the partnership's payroll, but the partnership did make some direct payments to these relatives, which will be discussed later. *79 As indicated above, Mr. Sturdevant did not think it necessary for the Flandreau partnership to provide its customers with counter sales service in addition to that provided by petitioner or with special delivery or pick-up service in order for the partnership to operate profitably. However, throughout the taxable years in issue, Mr. Sturdevant may have been aware of the fact that members of petitioner's family, at petitioner's behest, were sometimes providing such services on behalf of the partnership. He was aware that petitioner was drawing some checks on the partnership account for what he (Mr. Sturdevant) thought was for "casual help." He definitely became aware in 1976 that two of petitioner's daughters were working in the Flandreau store. [6]
*80 During the taxable years in issue, petitioner received a monthly payment in the amount of $50 from the partnership as reimbursement for expenses he may have incurred in using his personal automobile in connection with the partnership's business. The partnership deducted the $600 per year for automobile expense, and petitioner did not report the item as income. Although petitioner never requested any increase in such payments, [7] Mr. Sturdevant acknowledged during the audit and at trial that petitioner may have incurred expenses in connection with the partnership's business exceeding the $50 per month paid to petitioner by the partnership. During respondent's audit of his returns, petitioner requested Mr. Sturdevant to furnish a statement on petitioner's behalf regarding petitioner's expenses in connection with the partnership's business. In response to petitioner's request, Mr. Sturdevant prepared a written statement as follows: TO WHOM IT MAY CONCERN: Mr. Laurie Johnson, as acting manager of Sturdevant's Auto * * * [Parts,] is furnished with a set dollar amount monthly to defray his business incurred expenses. He may however in the course of operating our business *81 incure [sic] additional expenses over and above his allowance. However, there was no business practice on the part of the Flandreau partnership or any of the other store partnerships requiring petitioner or any of the other store partners to pay the partnership's expenses with a partner's own personal funds rather than with the partnership's funds. It was not the practice of Sturdevant, Inc., as the controlling partner, to require the individual partners in its various auto parts store partnerships to pay the expenses of their respective partnerships with the individual partner's personal funds. [8]
*82 B. Deductions Claimed by Petitioner
1. 1974. On his 1974 joint Federal income tax return (Form 1040), petitioner reported Schedule E income of $12,876 from the Flandreau partnership, composed of salary of $7,050 and his distributive share of partnership income of $5,826. [9] Petitioner claimed a deduction for employee business expenses in the amount of $7,520. The components of this deduction were itemized on a statement attached to petitioner's 1974 return entitled "DIRET [sic] OPERATING EXPENSES ON [sic] PARTNERSHIP IN STURDEVANT'S, INC. FLANDREAU SO. DAK." The items stated therein were as follows: Item
Amount
Station wagon rental
$1,500
Gas and oil
2,840
Delivery expense
2,200
Janitor expense
980
Total
$7,520
The $1,500 amount for station wagon rental resulted from petitioner's payment of a $150 monthly rental to Julson Motors Leasing Company, Flandreau, South Dakota (Julson *83 Motors), for a 1973 Plymouth nine-passenger station wagon (the station wagon). Petitioner had begun leasing the station wagon from Julson Motors sometime during 1973. At trial, petitioner claimed that the station wagon was used exclusively for business purposes (presumably in connection with the partnership's business). In support of, inter alia, the station wagon rental item, petitioner submitted a schedule (petitioner's first schedule) of checks drawn on the joint checking account (petitioner's checking account), number 053014, maintained by petitioner and his wife at the Brookings, South Dakota office of Northwestern National Bank of Sioux Falls, South Dakota. Petitioner's first schedule indicates that during taxable year 1974 nine checks totalling $1,350, each check in the amount of $150 and payable to Julson Motors, were drawn on petitioner's checking account. Effective October 4, 1973, petitioner added the station wagon to the automobile insurance policy he maintained with Union Insurance Company of Lincoln, Nebraska. On petitioner's "Request for Policy Change" used to effect this addition, the station wagon was described as being used "at home" and for "pleasure" *84 purposes (as opposed to business purposes). During each of the taxable years 1974, 1975, and 1976, petitioner insured the station wagon for nonbusiness, noncommercial use. Petitioner's first schedule also indicates that, during his 1974 taxable year, 16 checks totalling $172.93 were drawn on petitioner's checking account for gasoline and other auto supplies. Fifteen checks were payable to various gasoline stations; one check was payable to the partnership. Petitioner testified that he determined the oil and gas expense for taxable year 1974 on a mileage basis using a rate of 15 cents per mile driven. Petitioner testified that during taxable year 1974 the station wagon was driven between 25,000 and 26,000 miles in the course of its use in the partnership's business. [10] A customer repair order from Julson Motors dated October 15, 1974, indicates that the odometer reading for the station wagon as of that date was 15,204 miles. The delivery expense in the amount of $2,200 represents the *85 total unreimbursed payments allegedly made by petitioner to members of his family for delivery and pick-up services they performed for the partnership during taxable year 1974. In support of the delivery expense item, petitioner presented copies of receipts that purport to evidence cash payments made by petitioner to his children during taxable year 1974. Petitioner testified that he prepared these receipts at the time the cash payments were made and that his children also signed them at that time. Generally, there is one receipt in the amount of $60 for each of petitioner's three daughters for every month during 1974, each such receipt bearing a date near the end of the month in which it was purportedly prepared and executed. However, there are two receipts dated December 30, 1974, in the amount of $75 signed by Kristen Johnson; two receipts dated October 31, 1974, in the amount of $60 and one receipt dated December 30, 1974, in the amount of $70 signed by John Johnson; and no receipt for either October or December of 1974 signed by Gayle Johnson. According to these receipts, the total amount of cash payments to each of petitioner's daughters during 1974 is as follows: *86 Daughter
Amount
Kristen Johnson
$ 810
Joan Johnson
790
Gayle Johnson
600
Total
$2,200
In taxable year 1974, Kristen Johnson was in the eighth grade; Joan and Gayle Johnson were both in high school. Joan Johnson was not issued a driver's license by the State of South Dakota until November 12, 1975. Petitioner made no mention of the janitor expense of $980 for taxable year 1974 in his testimony at trial. The record, however, contains copies of receipts dated near the end of each month during taxable year 1974 and signed by petitioner's son, Troy Johnson. The receipts indicate payments by petitioner to his son in the amount of $80 per month, except that the receipts dated November 31, [sic] 1974, and December 30, 1974, respectively, are in the amount of $90. The total amount of payments evidenced by such receipts for taxable year 1974 is $980. During taxable year 1974, Troy Johnson was 9 or 10 years of age. Thus, for 1974 $3,180 of the $7,520 deductions claimed by petitioner were for cash payments allegedly made to his four children. The Court is not pursuaded that any of these alleged cash payments were in fact made. If the payments were in fact *87 made to the children, the Court is not pursuaded that the payments were compensation for services actually rendered to the partnership or were reasonable compensation for any services the children might have rendered. 2. 1975. On the Schedule C (Profit or (Loss) From Business or Profession) attached to his 1975 joint Federal income tax return (Form 1040), petitioner reported gross receipts of $13,981. That figure represented his salary of $7,950 from the partnership and his distributive share of the partnership income of $6,031. [11] Against the $13,9818 petitioner claimed a number of deductions for the taxable year to determine his net profit from his interest in the partnership. Petitioner reported this net profit figure on his 1975 return as business income. The deductions claimed by petitioner on the Schedule C were for the following expenses: Expense
Amount
Rent on business property
* $ 518
Salaries and wages
2,800
Insurance
180
Interest on business
indebtedness
1,150
Car expense
1,450
Utilities
281
Janitor expense
600
Delivery expense
720
Total
$7,699
*88 There is little or no evidence in the record supporting these deductions. The scant record contains a copy of a statement from Julson Motors in the amount of $91.40. This statement indicates a previous balance due in the amount of $54.97, and two new charges added thereto in the amounts of $29.83 and $6.60. The statement does not reveal the nature of the charges represented by the previous balance. The additional charges are further explained by copies of repair orders from Julson Motors dated October 14, 1974, and October 15, 1974, respectively. These repair orders show that the additional charges were for an oil change and lube job, and an engine tune-up and choke correction, respectively, performed on the Plymouth station wagon by Julson Motors on those dates in 1974. A handwritten notation on the statement indicates that it was paid on January 24, 1975. The only other documentary evidence in the record regarding petitioner's business deductions for taxable year 1975 is an entry on petitioner's first schedule indicating that a $5 check payable to a gas station was drawn on petitioner's checking account on December 2, 1975. At trial, petitioner asserted *89 for the first time that most of the documents supporting the business expenses claimed as deductions on his 1975 tax return were lost in a fire at the location of a hardware business petitioner entered into after leaving the partnership. [12] Petitioneralso testified that the rental and utilities expense deductions were based on the business use of petitioner's home during taxable year 1975. The insurance expense deductions related to petitioner's payment of the insurance premiums on the station wagon. [13] There is no documentation or other evidence as to the other deductions for 1975. *90 3. 1976. On his 1976 joint Federal income tax return (Form 1040), petitioner reported income of $17,226 from the Flandreau partnership, composed of salary of $10,033 and his distributive share of partnership income of $7,193. [14] On the Schedule A (Itemized Deductions) attached to that return, petitioner claimed as miscellaneous deductions the following expenses arising out of his participation in the partnership: Item
Amount
Tires
$ 320
Mileage
360
Office
300
License
59
Insurance
260
Delivery expense
2,960
Janitor expense
1,440
Car depreciation
1,800
Engine repair
210
Total
$7,709
The only evidence in the record regarding the listed items is petitioner's testimony at trial concerning the office item in the amount of $300, which he said represented the expenses for an office maintained in his home. Petitioner offered no further documentary or testimonial evidence to substantiate any of the itemized deductions. See footnote 12. C. Partnership Reimbursements to Petitioner
On his joint Federal income *91 tax returns (Forms 1040) for the taxable years in issue, petitioner reported gross income from his participation in the partnership, composed of the following: Taxable
Petitioner's
Petitioner's Share of
Petitioner's
Year
Salary
Partnership Income *
Gross Income
1974
$ 7,050
$5,826
$12,876
1975
7,950
6,031
13,981
1976
10,033
7,193
17,226 In additionto the salary payments set forth above, petitioner also received nontaxable distributions from the partnership during the taxable years in issue. His total salary and nontaxable distribution payments from the partnership for such taxable years were as follows: Taxable
Nontaxable
Total Salary
Year
Salary
Distributions
and Distributions
1974
$ 7,050
$5,000
$12,050
1975
7,950
5,000
12,950
1976
10,033
6,000
16,033
The total payments made by the partnership to petitioner during his 1974, 1975, and 1976 taxable years are indicated by the total dollar amount *92 of checks drawn in favor of petitioner during each such taxable year on a checking account (the partnership's checking account) that was maintained by the partnership at Farmer's State Bank, Flandreau, South Dakota. The amount by which these total payments exceed the partnership's salary and nontaxable distribution payments to petitioner in a particular taxable year is referred to herein as the "excess payments" for such taxable year. The total payments, salary and nontaxable distribution payments, and excess payments made by the partnership to petitioner during each taxable year in issue are as follows: Taxable
Total
Salary and
Excess Payments
Year
Payments
Distribution Payments
(Difference)
1974
$14,350
$12,050
$2,300
1975
15,650
12,950
2,700
1976
17,583
16,033
1,550 Of the total amount constituting excess payments in each taxable year in issue, $600 thereof ($50 per month) represents amounts paid by the partnership to petitioner as reimbursement for expenses petitioner may have incurred in using his automobile in connection with the partnership's business during such years. Mr. Sturdevant's only explanation for the balance *93 of the excess payments to petitioner during each taxable year in issue was that it was reimbursement for "casual help." These possible reimbursements for "casual help" amounting to $1,700, $2,100, and $950 for 1974, 1975, and 1976, respectively, are less than the amounts claimed as deductions by petitioner for services allegedly rendered by his family members. Also, these possible reimbursements do not include certain amounts paid by the partnership directly to Dave and Norman Johnson in 1974 and directly to them and to Gayle and Joan Johnson in 1975 and 1976. On the joint Federal income tax returns (Forms 1040) filed for his 1974, 1975, and 1976 taxable years, petitioner reported as income from his participation in the partnership only the amount of his salary from the partnership and his distributive share of the partnership's income. Petitioner did not report as gross income any portion of the excess payments he received from the partnership during the taxable years in issue. D. Partnership Payments to Petitioner's Relatives
During the taxable years 1974, 1975, and 1976, a number of checks were drawn on the partnership's checking account and made payable to various *94 members of petitioner's family. These checks were payment for services rendered by petitioner's relatives to the partnership. The individual payees and the total amount of payments made by the partnership to each respective payee and the payees as a group during each taxable year in issue were as follows: 1974
Payee
Total Payments to Payees
Norman Johnson
$829.60
Dave Johnson
80.00
Total
$909.60
1975
Payee
Total Payments to Payees
Norman Johnson
$397.30
Dave Johnson
130.00
Gayle Johnson
280.00
Total
$807.30
1976
Payee
Total Payments to Payees
Norman Johnson
$1,234.20
Gayle Johnson
290.00
Joan Johnson
66.70
Total
$1,590.90
The expenses petitioner claimed as deductions on his joint Federal income tax returns (Forms 1040) for the taxable years in issue allegedly represent expenses incurred by petitioner in excess of any reimbursements he received from the partnership and in addition to any payments made by the partnership directly to petitioner's relatives. Petitioner has not established that his relatives rendered any services in addition to those for which the partnership made the direct payments. Petitioner *95 has not established that he made any payments to his relatives out of his own personal funds for any services rendered to the partnership. Petitioner has failed to substantiate the other deductions he claimed as partnership expenses. II. Medical and Interest Expenses
On the Schedule A (Itemized Deductions) attached to his 1974 joint Federal income tax return (Form 1040), petitioner claimed a net deduction in the amount of $1,527 for medical expenses. The only evidence in the record supporting this deduction are two schedules listing checks drawn on petitioner's checking account during taxable year 1974 and payable to a number of doctors, a few drug stores, one National Limbs, Inc., and one Roy Shrock. The aggregate amount of these checks payable to the various categories of payees is as follows: Payee
Amount
Doctors
$510.00
Drug stores
58.75
National Limbs,
Inc.
86.32
Roy Shrock
40.00
Total
$695.07
On audit, respondent allowed no amount for medicine and drugs; the checks made out to the drug stores do not establish that those items were deductible expenditures for medicine and drugs. The remaining amount after eliminating the *96 checks to drug stores, $636.32, is less than the $1,032.32 other medical expenses already allowed by respondent in recomputing petitioner's net deductible medical expense. On the Schedule A (Itemized Deductions) attached to his 1975 joint Federal income tax return (Form 1040), petitioner claimed a deduction in the amount of $1,263 for interest expenses. The record is devoid of any evidence substantiating this deduction. See footnotes 4 and 12. OPINION I. Partnership Related Expenses
Generally, section 162(a)[15] allows as a deduction all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." [16] The deduction afforded by section 162(a) is a matter of legislative grace, and petitioner bears the burden of proof to establish his right to the claimed deduction. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). *97 Petitioner's primary argument in support of the deductibility of the expenses he claims to have incurred in connection with his participation in the partnership's business is as follows: As a partner in the partnership, petitioner was liable for any loss of the partnership. [17] Because of his potential liability, petitioner reasons that he should be allowed a deduction for any expense he incurred to enhance the partnership's profitability or to protect his investment in the partnership. This argument fails to recognize that the expenses for which petitioner claimed deductions, even if they were paid by petitioner, were incurred in the partnership's trade or business of selling auto parts and supplies. [18]
*98 Respondent, on theother hand, contends that petitioner is not entitled to deduct his alleged partnership related expenses because petitioner has failed to prove that: (1) An agreement existed between petitioner and Sturdevant, Inc., that required petitioner to pay partnership expenses with petitioner's own funds; (2) Petitioner actually incurred the claimed expenses since petitioner has failed to substantiate most of such expenses; (3) Any expenses actually incurred by petitioner in connection with his participation in the partnership were ordinary and necessary expenses as required by section 162(a); and (4) Petitioner was not reimbursed for his partnership related expenses. It is well established that a partner may not claim partnership expenses he has paid with his own funds as deductions against his individual gross income unless the partnership agreement requires the partner to so pay such expenses. E.g., Cropland Chemical Corp. v. Commissioner,75 T.C. 288, 295 (1980), affd. in an unpublished opinion 665 F. 2d 1050 (7th Cir. 1983); *99 Graham v. Commissioner,35 T.C. 273, 278 (1960); Wallendal v. Commissioner,31 T.C. 1249, 1252 (1959); Klein v. Commissioner,25 T.C. 1045, 1051, 1052 (1956); Wilson v. Commissioner,17 B.T.A. 976, 979 (1929); O.D. 1122, 5 C.B. 121, 122 (1921); A.R.R. 551, 4 C.B. 215, 216 (1921); O.D. 947, 4 C.B. 137 (1921). Petitioner has not presented any probative evidence to establish that he was required by any agreement, written or oral, with Sturdevant, Inc., to pay the partnership's expenses with his own funds. [19] The partnership agreement contains no express provision regarding payment of the partnership's expenses by the partners thereof. However, the agreement expressly provides for the partnership's profits and losses to be shared in accordance with the percentage of capital contributed--25 percent for petitioner and 75 percent for Sturdevant, Inc. If petitioner were required to pay partnership expenses with his own personal funds, as he argues, then he would not, in economic reality, be sharing 25 percent of the partnership's profits or losses but some lesser *100 percentage of profits and some greater percentage of losses.Moreover, petitioner presented no other written agreement nor did petitioner testify or present any other witness to testify regarding any oral agreement between petitioner and Sturdevant, Inc., that required petitioner to pay expenses of the partnership with his own funds.There was simply no express agreement in this regard. The lack of an express agreement containing such a requirement does not necessarily end our inquiry. *101 In Klein v. Commissioner,supra,25 T.C. at 1052, this Court held that the taxpayer-partner was entitled to deduct partnership expenses paid with his own funds to the extent such expenses were ordinary and necessary partnership expenses, despite the lack of evidence as to the exact terms of the partnership agreement involved therein. The taxpayer in Klein presented convincing evidence that his payment of partnership expenses with his own funds was pursuant to a routine partnership business practice arising from the taxpayer's acquiescence in his partner's insistence that the taxpayer pay the partnership expenses with the taxpayer's own funds.This insistence was based on an agreement between the taxpayer and his partner to increase the taxpayer's distributive share of partnership net income or loss. We determined that under such circumstances the routine partnership business practice was tantamount to an agreement between the taxpayer and his partner that the taxpayer pay the partnership expenses out of his personal funds, and that the taxpayer was therefore entitled to deduct such expenses as were ordinary and necessary partnership expenses against his *102 individual gross income. Klein v. Commissioner,supra,25 T.C. at 1052. The facts of this case, however, do not support a similar conclusion. Neither petitioner nor Mr. Sturdevant, the only other witness at trial, gave any indication in his testimony that Sturdevant, Inc., required petitioner to pay any of the partnership's expenses with his own funds. None of the stipulations or exhibits in the record suggest such was the case. At petitioner's request, Mr. Sturdevant did execute a written statement to the effect that petitioner may have incurred expenses on behalf of the partnership in excess of any reimbursements paid by the partnership to petitioner. However, Mr. Sturdevant testified, and we have accepted his testimony, that it was not a practice of Sturdevant, Inc., to require any of the individuals like petitioner who were its partners in various auto parts store partnerships to pay expenses of their respective partnerships with the individual partner's personal funds. See footnote 8. Thus, our holding in Klein v. Commissioner,supra, is distinguishable on its facts and is of no aid to petitioner. To the extent, if *103 any, that petitioner may have paid the partnership's expenses with his personal funds, it was not pursuant to any routine business practice of the partnership nor did any such alleged practice on petitioner's part rise to the level of being tantamount to an agreement with Sturdevant, Inc., that he do so. Compare Tonkoff v. United States, an unreported case ( E.D. Wash., 1973, 32 AFTR 2d 73-6038, 73-2 USTC par. 9690), affd. by unpublished opinion (9th Cir., June 2, 1975). There the District Court held that the taxpayer was not, under the theory of our holding in Klein v. Commissioner,supra, entitled to deduct partnership expenses he personally incurred. The District Court found that the practice of the taxpayer's partnership was to permit the taxpayer to personally pay partnership expenses with his own funds and then at his sole election and determination seek or forego reimbursement therefor from his partnership. The District Court held that such an arrangement fell short of establishing an agreement or understanding that the taxpayer was required to pay such expenses, and therefore fell short of satisfying the requirements of *104 our decision in Klein v. Commissioner,supra.
We hold that petitioner is not entitled to deduct any of the expenses of the partnership he may have paid with his personal funds during the taxable years in issue, because his personal payment of such expenses was not required by any agreement with Sturdevant, Inc., nor by any routine business practice of the partnership that was tantamount to such an agreement. We therefore need not consider respondent's other arguments. [20]
*105 II. Medical and Interest Expenses
Section 213[21] allows, subject to various statutory floor limitations, a deduction for expenses incurred by a taxpayer for the medical care of the taxpayer, his spouse, and his dependents. *106 For taxable year 1974, petitioner claimed a net deduction in the amount of $1,527 for medical expenses that was partially disallowed by respondent. The only evidence in the record supporting petitioner's medical expense deduction is two schedules listing checks drawn on petitioner's checking account during taxable year 1974 and payable to a number of doctors, a few drug stores, one National Limbs, Inc., and a Roy Shrock. Petitioner failed to present any evidence that the checks payable to the drug stores, National Limbs, Inc., or Roy Shrock were in payment of expenses properly deductible under section 213. However, we think a reasonable inference can be drawn from the payees and the amounts of the checks that those checks made payable to doctors represent payment of expenses properly deductible under section 213. Therefore, petitioner may well be entitled to include the total amount ($510) of such checks in the calculation of petitioner's deduction under section 213 for taxable year 1974. However, respondent has already allowed $1,032.32 for medical expenses other than medicine and drugs and half of health insurance prrmiums (before deducting the three percent floor). *107 Sec. 213(a)(1) and (2). We cannot find that the $510 represents additional amounts not previously allowed, and we must therefore sustain respondent's determination. For taxable year 1975, petitioner claimed a net deduction in the amount of $382 for medical expenses. In the notice of deficiency pertaining to that taxable year, respondent disallowed $232 of such deduction due to an increase in petitioner's adjusted gross income resulting from respondent's other determinations. Respondent allowed only the $150 for insurance premiums for medical care (one-half but not more than $150). Sec. 213(b). See footnote 22. On brief, respondent argues for the first time that the entire medical expense deduction claimed by petitioner for 1975 should be disallowed for lack of substantiation. This Court will not consider issues first raised on brief. Rollert Residuary Trust v. Commissioner,80 T.C. 619, 636 (1983), on appeal (6th Cir., August 29, 1983); Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975); Estate of Horvath v. Commissioner,59 T.C. 551 (1973); *108 Robertson v. Commissioner,55 T.C. 862, 865 (1971). Thus, petitioner is entitled to the medical expense deduction for his 1975 taxable year in the amount of $150 allowed in respondent's notice of deficiency for such taxable year. However, the total amount of allowable itemized Schedule A deductions is less than the standard deduction for 1975 in any event, so petitioner will receive the benefit of the $2,600 standard deduction. See footnotes 2 and 3. Generally, section 163[22] allows a deduction for all interest paid or accrued during the taxable year on indebtedness. Petitioner bears the burden of proof with respect to such deductions. New Colonial Ice Co. v. Helvering,supra;Welch v. Helvering,supra;Rule 142(a). For taxable year 1975, petitioner claimed a deduction in the amount of $1,263 for interest expenses that was disallowed by respondent. Petitioner did not address this issue either at trial or in either of his briefs. Having offered no evidence to substantiate any of the interest expenses claimed as *109 a deduction for taxable year 1975, petitioner has failed to meet his burden of proof regarding such deduction, and respondent's disallowance thereof is sustained. Welch v. Helvering,supra;Rule 142(a). As noted above, petitioner is entitled to the standard deduction for 1975. To reflect the foregoing and the parties' concessions, Decision will be entered under Rule 155 in docket No. 11534-77.
Decisions will be entered for the respondent in docket Nos. 1910-79 and 8896-79.
Footnotes
1. Petitioner filed a separate petition for each notice of deficiency. The separate notices of deficiency dated August 18, 1977, November 16, 1978, and March 22, 1979, involved herein were addressed to both Laurie E. Johnson and Delores M. Johnson, husband and wife, and relate to the joint Federal income tax returns (Forms 1040) filed by Mr. and Mrs. Johnson for their 1974, 1975, and 1976 taxable years, respectively. However, only Laurie E. Johnson has petitioned this Court to redetermine the deficiencies in issue. Where necessary herein, all references to petitioner's Federal income tax returns, liabilities, and related items are to the joint Federal income tax returns, liabilities, and related items of Laurie E. Johnson and Delores M. Johnson. ↩
2. The issues raised in the notices of deficiency that have been conceded by the parties are as follows: (1) A home office expense deduction in the amount of $87 for 1974 conceded by petitioner. (2) A deduction for home insurance premiums in the amount of $165 for 1975 conceded by petitioner. (3) The use of the standard deduction rather than the allowed itemized deductions to determine petitioner's taxable income for 1975 conceded by petitioner. (4) An interest expense deduction in the amount of $871.20 for 1976 conceded by petitioner. (5) An additional interest expense deduction in the amount of $208.37 for 1974 conceded by respondent. ↩
3. Respondent's other adjustments to petitioner's income and social security self-employment tax in the notices of deficiency depend solely upon the resolution of the issues stated in the text. The other adjustments include: (1) For 1974, an adjustment to petitioner's state sales tax deduction (dependent on petitioner's adjusted gross income for the taxable year). (2) For 1975, an adjustment to petitioner's medical expense deduction (dependent on petitioner's adjusted gross income for the year). (3) For 1976, an adjustment to petitioner's use of itemized deductions rather than the standard deduction (dependent on the amount of itemized deductions ultimately allowed). (4) For 1974, 1975, and 1976, adjustments to the amount of petitioner's social security self-employment tax (dependent on petitioner's net earnings from self-employment).↩
4. The record does not indicate whether the filled orders were delivered from the Pipestone store to the Flandreau store or directly to the partnership's customers, or how often such deliveries were made. Petitioner's briefs contain statements as to these and other ex parte matters that we must disregard. We note that many factual allegtions made by petitioner in his briefs are outside of the record. Such factual allegations do not constitute evidence. Evans v. Commissioner,48 T.C. 704, 709 (1967), affd. per curiam 413 F. 2d 1047 (9th Cir. 1969); Rule 143(b), Tax Court Rules of Practice and Procedure.↩ At the end of the trial, the Court specifically explained to petitioner that the Court's findings of fact must be based on the evidence of record and that new factual allegations raised for the first time in briefs must be disregarded.The Court also exhorted petitioner to present at that time any additional evidence he considered relevant. Petitioner failed to present any further evidence thereafter.
5. The record does not indicate which members of petitioner's family made any such deliveries and pick-ups for the partnership's customers.The members of petitioner's family identified in the record as working in the store are Norman, Dave, Gayle, Kristen, and Joan Johnson. Norman Johnson is petitioner's brother. Gayle, Kristen, and Joan Johnson are petitioner's daughters.The record does not disclose Dave Johnson's relationship to petitioner. The only indication in the record of the number of hours worked by petitioner's relatives is a calendar sheet for January of 1976 with handwritten notations stating the number of hours allegedly worked by Gayle and Joan Johnson each day during that month.↩
6. Petitioner sent a calendar sheet for January 1976 to Mr. Sturdevant with the following note: Enclosed are the hours my girls helped me. I made the check out to me. I will pay the tax on it. That is the way they wanted it. The record shows that petitioner did not report those amounts in his income for the year. The record does not show whether the daughters reported those payments as income nor whether those payments are part of the deductions claimed by petitioner for the year.↩
7. Mr. Sturdevant testified without contradiction by petitioner that petitioner never requested an increase in the monthly expensereimbursement payment. On brief petitioner argues that he requested and was denied an increase. The Court disregards petitioner's unsworn statement on brief (see footnote 4), and accepts Mr. Sturdevant's sworn testimony. ↩
8. In response to a direct question by the Court, Mr. Sturdevant so testified and petitioner did not challenge his testimony. On brief petitioner argues that he and the other partners in the other store partnerships followed a practice of making such payments. Again the Court disregards petitioner's unsworn statement on brief (see footnote 4) and accepts Mr. Sturdevant's sworn and uncontradicted testimony.↩
9. In computing his self-employment tax for 1974, petitioner used a figure of $5,356 as his net income from self-employment. This figure is the full amount received from the partnership ($12,876) less the employee business expenses claimed ($7,520).↩
10. Petitioner claimed a deduction of $2,840 on his return. A figure of 25,000 or 26,000 miles at 15 cents par mile yields expense figures of $3,750 and $3,900, respectively.↩
11. Again petitioner computed his self-employment tax on $6,282 (the total amount received from the partnership ($13,981) less the total expenses deducted on the Schedule C ($7,699)).↩
*. Petitioner entered the $518 amount for rent twice on his Schedule C but only deducted it once. ↩
12. This belated claim is troubling. The Court had once dismissed these cases for failure properly to prosecute, but vacated those decisions to permit petitioner to produce his documentation.As recently as September of 1982, petitioner represented, in his Rule 50(c) statement, that "petitioner will present to the Court proof of all expenses claimed, canceled checks, receipts, etc." After protracted Court-supervised pretrial preparations and at the trial almost a year later, petitioner produced little documentation or other evidence. Petitioner suggested at trial for the first time that his documents had been lost in a fire. On brief he now says that such fire occurred in 1977. This is a date before issuance of the notices of deficiency for 1975 and 1976, before the dismissals for lack of prosecution, and well before the commencement of the Court-supervised pretrial proceedings designed to enable petitioner to organize and produce the documents he now says had already been destroyed. Petitioner has either tried to delay these proceedings by his actions or he has been less than candid with respondent and the Court or both. ↩
13. The record contains Union Insurance Company of Lincoln, Nebraska, automobile policy declarations which indicate petitioner's automobile insurance coverage and premiums due for the taxable years in issue. These declarations do not substantiate any payment of automobile insurance premiums by petitioner.↩
14. Petitioner computed his self-employment tax on an amount of $11,201, a figure nowhere explained by the record.↩
*. The partnership's total income for the taxable years 1974, 1975, and 1976 was $23,305, $24,122, and $28,774, respectively. Petitioner's distributive share of such income was 25 percent.↩
15. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
16. In pertinent part, section 162 provides as follows: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, or property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *↩
17. See Uniform Partnership Act, Sec. 15, 6 U.L.A. 174 (1969), adopted in South Dakota and codified at S.D. Codified Laws Ann. Secs. 48-2-10 and 48-2-11↩ (1983). 18. On brief, petitioner also asserts that respondent has failed to prove that the claimed expenses were not in fact incurred by petitioner and that such expenses were not ordinary and necessary expenses of the partnership. As noted above, the burden of proof regarding his deductions rests with petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a)↩. Additionally, petitioner suggests on brief that our decision herein must be based solely on the Constitution and statutes of the United States without consideration of any previous decision of this or any other court. Such a frivolous suggestion is not worthy of further comment.
19. Petitioner asserts on brief that the written statement by Mr. Sturdevant "is actually an agreement that I would have and did have additional expenses of my own." We do not subscribe to petitioner's interpretation of such statement. As noted in our finding of fact, during respondent's audit of petitioner, petitioner requested Mr. Sturdevant to make a statement on petitioner's behalf regarding petitioner's expenses in connection with the partnership's business. The statement relied on by petitioner was the result of that request. We will not construe a statement to the effect that petitioner may incur expenses in connection with the partnership's business in excess of those for which petitioner was reimbursed, made by the president of petitioner's corporate partner at petitioner's request and after respondent's audit of petitioner had commenced, as an agreement between petitioner and his corporate partner requiring petitioner to pay the partnership's expenses with his own funds. See footnote 8, supra.↩
20. Had petitioner been required either by the partnership agreement or by a routine business practice of the partnership tantamount to such an agreement to pay the partnership's expenses with his own funds and therefore presumably entitled to deduct such expenses from his individual gross income, we would still have serious doubts as to whether petitioner could prevail in this case. Petitioner simply has not carried his burden of proof (1) that he actually incurred the expenses of the partnership for which he claimed deductions, (2) that he was not reimbursed for many of such expenses, and (3) that all of such expenses were ordinary and necessary expenses of the partnership.↩
21. During the taxable years in issue, section 213 provided, in pertinent part, as follows: (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. (b) Limitation with Respect to Medicine and Drugs.--Amounts paid during the taxable year for medicine and drugs which (but for this subsection) would be taken into account in computing the deduction under subsection (a) shall be taken into account only to the extent that the aggregate of such amounts exceeds 1 percent of the adjusted gross income. * * * (e) Definitions.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, * * * We note that section 213 was substantially amended subsequent to the taxable years in issue. See sections 423(b)(1) and (3), 482(a) andf (b)(1), 711(b), and 474(r)(9) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 800, 848, 943, and 841 and section 202 of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 421-422, 1982-2 C.B. 462↩, 470-471.
22. In pertinent part, section 163 provides as follows: (a) General rule.↩--There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.