CROPLAND CHEMICAL CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11260–78.     Filed November 25, 1980.

*David J. Duez,* for the petitioner.
*Mitchell S. Fuerst,* for the respondent.

NIMS, *Judge:* Respondent determined deficiencies in petitioner's income tax for its fiscal years ended February 28, 1974, and February 28, 1975, in the amounts of $34,501 and $130,181, respectively. The issues for decision are whether petitioner may deduct as compensation amounts paid to Robert A. Trowbridge and Delores S. Trowbridge and amounts contributed on behalf of said individuals to a pension plan and profit-sharing plan maintained by petitioner. The parties agree that the resolution of the first issue will automatically dispose of the second issue.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and the attached exhibits are incorporated herein by reference.

Petitioner Cropland Chemical Corp. was incorporated in March 1970, as an Arizona corporation. At the time of filing its petition in this case, the petitioner's principal place of business was Latham, Ill. At all times material herein, all of petitioner's issued and outstanding stock was owned by Robert A. and Delores S. Trowbridge; they owned 500 shares which were issued at a fixed value of $10 per share. Robert A. Trowbridge (Trowbridge) was president and general manager of petitioner.

Morrison Coal Co., Inc. (Morrison Coal), is an Arkansas corporation with its principal place of business in Salina, Kans. Morrison Grain Co., Inc., is a Kansas corporation with its principal place of business at Salina, Kans. Morrison Coal is a wholly owned subsidiary of Morrison Grain Co., Inc. Milton Morrison (Morrison) is president of Morrison Coal.

During the year 1970, Trowbridge developed the concept of marketing surplus and scrap chemicals as agricultural products. Yet, he lacked the financial reserves necessary for purchases of large quantities of surplus chemicals. He contacted Morrison and proposed a business venture.

On November 16, 1970, petitioner and Morrison Coal entered into a joint venture agreement which formed Agro Marketing Co. (referred to as Agro or the joint venture). The principal office of Agro was located in Latham, Ill., during the years in issue. The joint venture was organized for the sole purpose of purchasing surplus agricultural chemicals, fertilizers, insecticides, and other products for resale and the processing, packaging, and distribution of agricultural chemicals, fertilizers, insecticides and other products for sale at wholesale or retail. Agro filed partnership income tax returns on a calendar year basis.

The joint venture agreement provided for a basic 50–50 split of income and expense between the cojoint venturers, petitioner and Morrison Coal. Each made initial contributions of cash and property to Agro in equal amounts. Each contributed property having a value of approximately $25,000. The joint venture agreement required that the capital accounts of the coventurers remain in proportion to their respective 50-percent interests. In the event a coventurer failed to maintain a capital account balance equal to its proportionate interest, the portion of the

other coventurer's capital account which was in excess of the 50-percent interest was deemed to be an interest-bearing indebtedness of the joint venture to the other venturer.

The joint venture agreement required the performance of services by Trowbridge for Agro. The value of the services rendered by Trowbridge to Agro was not part of petitioner's contribution to the joint venture's capital. The agreement provided that no salary or compensation for services rendered to the joint venture would be received by either of the parties to the agreement unless mutually agreed upon in writing by the parties. Attached to and incorporated into the joint venture agreement was an employment agreement under which Trowbridge was to be compensated for services rendered to Agro. Trowbridge's salary was computed on the basis of a monthly draw of $1,500 from 1970 through 1973, and $2,000 per month thereafter, plus 2 percent of the net income of Agro.

During the years 1970 through 1975, Trowbridge was general manager of Agro. He received the following salary for services performed for Agro during these years:

| Year | Salary from Agro | Year | Salary from Agro |
|------|------|------|------|
| 1970 | $1,500 | 1973 | $18,000 |
| 1971 | 18,750 | 1974 | 28,119 |
| 1972 | 18,000 | 1975 | 68,825 |

Delores S. Trowbridge was the office manager of Agro during the years in issue. She performed bookkeeping and other activities for the joint venture. She devoted a substantial amount of her working hours performing services for Agro and was compensated by Agro as follows:

| Year | Compensation from Agro | Year | Compensation from Agro |
|------|------|------|------|
| 1970 | 0 | 1973 | 0 |
| 1971 | 0 | 1974 | $3,770 |
| 1972 | 0 | 1975 | 1,015 |

As general manager of Agro, Trowbridge traveled around the United States to investigate potential plant and surplus chemical purchases by Agro. From 1971 through 1974, Agro purchased a number of plants in different locations in the United States, designed specialized equipment, and developed a system of manufacturing salvage and surplus chemicals into usable agri-

cultural products. Both petitioner, represented by Trowbridge, and Morrison Coal, represented by Morrison, participated in the major transactions and policy decisions which pertained to the affairs of Agro. Both petitioner and Morrison Coal made loans to and guaranteed the indebtedness of Agro. All transactions engaged in by petitioner and Morrison Coal, jointly, during the years in issue were conducted through the joint venture.

Agro developed into a highly successful marketing operation during the years 1973, 1974, and 1975, producing net income in those years of $320,129, $2,231,494, and $584,309, respectively. As a partner in Agro, petitioner, due to Agro's success, had increased amounts of income during these years. Petitioner's increased income was a direct result of Agro's success, since Agro was the only operating activity of petitioner during these years. Petitioner's business affairs exclusively pertained to its interest in Agro.

Robert A. and Delores S. Trowbridge were the directors of petitioner. Trowbridge was president and treasurer of petitioner; Delores S. Trowbridge was secretary of petitioner. The payments they received from petitioner during the tax years in issue were based upon a resolution adopted at a special meeting of shareholders on February 28, 1974. At that meeting, it was recognized that "Robert A. Trowbridge spends all of his time working for AGRO Marketing Co., a joint venture in which CROPLAND CHEMICAL CO. owns a 50% interest." It was further recognized that "Delores S. Trowbridge spends much of her working time performing office management and general secretarial work for AGRO Marketing Co." The resolution adopted provided that Trowbridge would be paid 40 percent of the net profits of petitioner before taxes and deferred compensation payments. It was further resolved that Delores S. Trowbridge would be paid $5,000 per year. The following payments were received by Trowbridge from petitioner for the fiscal year ended on February 28 of the following years:

| Year | Payments from petitioner |
|------|--------------------------|
| 1971 | 0 |
| 1972 | 0 |
| 1973 | 0 |
| 1974 | $63,505 |
| 1975 | 222,967 |

The following payments were received by Delores S. Trowbridge from petitioner for the fiscal year ended on February 28 of the following years:

| Year | Payments from petitioner |
|------|--------------------------|
| 1971 | 0 |
| 1972 | 0 |
| 1973 | 0 |
| 1974 | $5,000 |
| 1975 | 5,000 |

For the fiscal years ended the last day of February 1974 and 1975, petitioner deducted as compensation on its corporate income tax returns the amounts paid to Robert A. and Delores S. Trowbridge. Respondent allowed petitioner a deduction for a portion of the amounts paid to Robert A. and Delores S. Trowbridge as follows:

| Officer | Compensation deduction | | |
|---------|---------|---------|------------|
| | Claimed | Allowed | Disallowed |
| 1974: | | | |
| Robert A. Trowbridge | $63,505 | $10,000 | $53,505 |
| Delores S. Trowbridge | 5,000 | 1,000 | 4,000 |
| Total for 1974 | 68,505 | 11,000 | 57,505 |
| 1975: | | | |
| Robert A. Trowbridge | 222,967 | 10,000 | 212,967 |
| Delores S. Trowbridge | 5,000 | 1,000 | 4,000 |
| Total for 1975 | 227,967 | 11,000 | 216,967 |

In addition, because petitioner's contribution to its pension plan and profit-sharing plan for employees was based upon a percentage of compensation, respondent disallowed the portion of the contribution to each plan which was attributable to the officers' salaries which he disallowed.

OPINION

Petitioner Cropland Chemical Corp. was formed in March 1970. Robert A. and Delores S. Trowbridge have always been the sole stockholders of petitioner. During the fiscal years ending February 28, 1974, and February 28, 1975, the years in issue, they were the directors and principal officers of petitioner.

On November 16, 1970, petitioner and Morrison Coal entered

into a joint venture agreement which formed Agro. Agro was formed to engage in the production, acquisition, and sale of agricultural chemicals and fertilizers. The agreement provided that petitioner and Morrison Coal each had a 50-percent interest in Agro. All income and expense of the joint venture would be split equally by petitioner and Morrison Coal, and each contributed equal amounts to the joint venture.

The joint venture agreement required the performance of services by Trowbridge for Agro. Incorporated into the agreement was an employment agreement under which Trowbridge would be compensated by Agro for services rendered to Agro. Trowbridge was general manager of Agro during the years in issue.

Trowbridge received a salary from Agro during the years 1970 through 1975, inclusive. Agro became highly profitable and, as a result, petitioner's income increased. Petitioner paid Trowbridge $63,505 for its fiscal year ended February 28, 1974, and $222,967 for its fiscal year ended February 28, 1975. Petitioner paid Delores S. Trowbridge $5,000 in both such fiscal years. Petitioner deducted these amounts on its corporate income tax returns as compensation. Petitioner deducted corresponding amounts for contributions to a pension plan and profit-sharing plan for Robert A. and Delores S. Trowbridge.

Respondent denied the compensation deductions, except for $10,000 in each year to Trowbridge and $1,000 in each year to Delores S. Trowbridge, with corresponding allowances for contributions to the pension and profit-sharing plans.

The issues for decision are whether petitioner may deduct as compensation the amounts paid to Robert A. and Delores S. Trowbridge and the amounts contributed to the pension and profit-sharing plans. Resolution of the first issue will automatically dispose of the second issue.

Section 162(a)(1)[1] allows as a business expense deduction "a reasonable allowance for salaries or other compensation for personal services actually rendered." Petitioner contends that the deduction claimed should be allowed under any or all of three separate retionales. First, petitioner relies upon *Daily Journal Co. v. Commissioner*, 135 F.2d 687 (9th Cir. 1943), revg. a

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.

Memorandum Opinion of this Court, to support the deduction. (See discussion *infra.* ) Second, petitioner argues that although the general rule is that a partner cannot deduct expenses of the partnership on its personal return, there is an exception to the rule where the agreement between the parties places the economic burden of a partnership expense solely on one of the partners. Third, petitioner argues that the joint venture agreement constitutes a special allocation of the additional compensation deduction entirely to petitioner.

Respondent does not contend that the amounts paid to Robert A. or Delores S. Trowbridge exceed a reasonable allowance for salaries. Rather, respondent contends that the amounts paid by petitioner to Robert A. and Delores S. Trowbridge were in recognition of services rendered to Agro and are not trade or business expenses of petitioner deductible under section 162.

We will address each of petitioner's arguments. First, petitioner relies heavily on *Daily Journal Co. v. Commissioner, supra,* to support the deductions. Petitioner's reliance on this case is misplaced since it is distinguishable from the case at bar.

In *Daily Journal Co.,* four competing newspaper publishing corporations entered into an agreement to consolidate their publishing businesses and formed a corporation, called Consolidated, to publish the four papers. Each corporation continued in business and held shares in Consolidated. It was specifically understood and agreed by all parties that the new enterprise was to be managed by Daily Journal Co., acting, as a corporation must, through its agents. Wilson, president of Daily Journal Co., managed the business of Consolidated during the tax years in question, acting as president of Consolidated. All four papers were published under their former names.

The agreement in *Daily Journal Co.* specifically provided that the new enterprise, Consolidated, would pay no salary to any officer without the consent of all the directors. No salary was paid to Daily Journal Co.'s president, Wilson, by Consolidated. The only salary Wilson received for managing Consolidated was paid by Daily Journal Co. Daily Journal Co. deducted the amounts paid to Wilson as ordinary business expenses.

The Court of Appeals, reversing the Tax Court, found that Daily Journal Co.'s managerial activities in Consolidated were extensive, varied, continuous, and regular, and allowed Daily Journal Co. the salary deduction. The court held that the salary

paid to Daily Journal Co.'s agent, Wilson, was a usual and ordinary expenditure made in the course of Daily Journal Co.'s business, pursuant to an agreement to provide managerial services.

The facts in the instant case are clearly distinguishable from those in *Daily Journal Co.* and render its holding of little aid to petitioner. The joint venture agreement in the present case did not require petitioner to perform any managerial services for Agro. Rather, it required Trowbridge to perform services for Agro and specifically provided, in the employment agreement incorporated therein, the amount of compensation Agro would pay Trowbridge for such services. This arrangement was agreed to by petitioner and Morrison Coal as co-joint venturers in Agro. Agro was obligated to pay, and did pay, Trowbridge the agreed upon compensation for services he rendered to Agro.

*Daily Journal Co.* involved a different arrangement. There, Daily Journal Co. was required to provide managerial services to the new enterprise. Consolidated was not obligated to pay Daily Journal Co.'s agent, Wilson, any compensation for services rendered to Consolidated. We find that the *Daily Journal Co.* case does not support the claim that amounts paid by petitioner to Trowbridge are deductible as compensation.

Second, petitioner argues that an exception to a general rule of partnership taxation applies in this case allowing petitioner the compensation deductions. The parties agree that Agro is subject to the partnership taxation provisions of subchapter K of the Internal Revenue Code. Sec. 761(a). The general rule is well established that a partner cannot directly deduct on his income tax return the expenses of the partnership. *Wilson v. Commissioner*, 17 B.T.A. 976 (1929); *Klein v. Commissioner*, 25 T.C. 1045 (1956); *Farnsworth v. Commissioner*, 29 T.C. 1131 (1958), affd. 270 F.2d 660 (3d Cir. 1959). The exception to this rule is where there is an agreement among the partners that such partnership expenses shall be borne by particular partners out of their own funds. *Wallendal v. Commissioner*, 31 T.C. 1249 (1959); *Lewis v. Commissioner*, 65 T.C. 625 (1975). Where the exception applies, the partner is entitled to deduct the amount of the expense from his individual gross income.

Petitioner contends that the joint venture agreement between itself and Morrison Coal places the economic burden of a joint venture expense, i.e., compensating Trowbridge, solely on peti-

tioner. We need look no further than the joint venture agreement itself to dismiss petitioner's argument. The agreement specifically states what the expense of compensating Trowbridge will be: $1,500 per month from 1970 through 1973, and $2,000 per month thereafter, plus 2 percent of the net income of Agro. Except for the original salary agreement and the $500 per month adjustment, petitioner and Morrison Coal never discussed, agreed upon, or contemplated the payment by Agro of any other compensation to Trowbridge. The payments to Trowbridge by petitioner were not amounts that Agro was obligated to pay. Therefore, the basic premise of petitioner's argument fails since its payments to Trowbridge were not expenses of the joint venture that petitioner had to bear out of its own funds.

The joint venture agreement obligated Agro to pay Trowbridge according to the formula adopted therein. Trowbridge was so compensated, and this expense was shared equally by petitioner and Morrison Coal on a 50–50 basis. We find that the amounts petitioner paid Trowbridge were a result of a unilateral decision by petitioner to make such payments. That petitioner claims it paid Trowbridge for services rendered to Agro does not alter the tax consequences flowing from the joint venture agreement.

Finally, petitioner argues that, under the joint venture agreement, there is an unstated special allocation of the additional compensation deduction entirely to petitioner. Petitioner contends such special allocation is an implicit provision of the agreement. After reviewing the facts of record, we find this argument without merit.

Subchapter K of the Internal Revenue Code affords partners wide latitude to specify in the partnership agreement what each partner's distributive share of items of income and deduction will be. However, petitioner cannot now rewrite the terms of the agreement it voluntarily entered into.

The evidence clearly indicates that there was no special allocation of a deduction in this case. The partnership returns filed by Agro show no special allocation; the proportionate interest of the coventurers was stated at 50 percent in every return filed by Agro. The income tax returns filed by petitioner show no special allocation and state a proportionate interest in Agro of 50 percent. The testimony of Trowbridge and Morrison

further supports the conclusion that no special allocation existed or was ever proposed.

Petitioner has failed to sustain its burden of proving that it is entitled to deduct as compensation amounts paid to Robert A. and Delores S. Trowbridge. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142 (a), Tax Court Rules of Practice and Procedure. Petitioner's sole business activities related to its investment in Agro. Petitioner had no other business. In the minutes of a special meeting of shareholders of petitioner, the sole shareholders being Robert A. and Delores S. Trowbridge, it was reported that Robert A. Trowbridge spent all of his time working for Agro, and Delores S. Trowbridge spent much of her time working for Agro. For such services, both were compensated directly by Agro. Accordingly, since the amounts paid by petitioner to these individuals were for services rendered to Agro, we hold that they are not deductible as ordinary and necessary business expenses of petitioner.

Respondent allowed petitioner to deduct $10,000 in each year in issue as compensation to Trowbridge and $1,000 in each year as compensation to Delores S. Trowbridge. Respondent argues that these amounts sufficiently recognize any efforts of said individuals in seeing to the affairs of petitioner. We are inclined to agree with respondent. Trowbridge performed services directly to petitioner in seeing to its corporate affairs, and he also represented petitioner in its activities as a joint venturer in Agro. Delores S. Trowbridge also rendered some services to petitioner.

However, petitioner argues that part of the $222,967 paid to Trowbridge in the fiscal year ended February 28, 1975, constituted compensation for past services rendered during the fiscal years ended on February 28 of 1971, 1972, and 1973. At a board of directors meeting held on February 26, 1975, petitioner resolved to compensate Trowbridge in the current fiscal year for services rendered in past years where Trowbridge was never compensated. We find that Trowbridge performed services during those past years similar to the services he rendered to petitioner in the years before the Court. Compensation paid in one tax year for past services may be deducted even if the amount paid exceeds a reasonable allowance for current services. *Lucas v. Ox Fibre Brush Co.*, 281 U.S. 115 (1930); *R.J. Nicoll Co. v. Commissioner*, 59 T.C. 37 (1972). We think that the

amount respondent has allowed petitioner to deduct as compensation to Trowbridge during each of the years in issue should also be allowed as compensation deductions for past services rendered in years where petitioner did not compensate Trowbridge (1971, 1972, and 1973). Therefore, we hold that for the taxable year ended February 28, 1974, petitioner is entitled to deduct as compensation, $11,000; for the taxable year ended February 28, 1975, petitioner is entitled to deduct as compensation, $41,000. Petitioner is entitled to corresponding deductions for amounts contributed on behalf of Robert A. and Delores S. Trowbridge to a pension and profit-sharing plan maintained by petitioner. The excess payments made by petitioner to Robert A. and Delores S. Trowbridge during these years are dividends to shareholders out of earnings from petitioner's participation in the joint venture.

*Decision will be entered under Rule 155.*