MICHAEL J. GEVIRTZ AND JOAN K. GEVIRTZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gevirtz v. Commissioner
Docket No. 27914-84.
United States Tax Court
T.C. Memo 1987-144; 1987 Tax Ct. Memo LEXIS 140; 53 T.C.M. (CCH) 379; T.C.M. (RIA) 87144; March 18, 1987. Jack A. Linton and Steven P. Krasney, for the petitioners. David E. Gaston, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined that for 1979 there is a deficiency in petitioners' income tax of $32,098 and an addition to tax under *141 section 6653(a) of $1,605. After concessions, the only issues remaining for decision are: (1) whether a payment of $65,000 made by Michael J. Gevirtz to Belyn Corporation for consulting services is the expense of a limited partnership or of Gevirtz as its general partner and (2) whether petitioners are liable for the addition to tax under section 6653(a) [now sec. 6653)(a)(1)] [1]. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and the exhibits attached thereto are incorporated herein by reference. Petitioners, Michael J. Gevirtz ("Gevirtz" or "petitioner") and Joan K. Gevirtz, husband and wife, resided in Reading, Pennsylvania at the time their petition was filed in this case. Gevirtz is a close personal friend of Baron Jasper ("Jasper"), an experienced certified public accountant. During the summer of 1979, Jasper spoke frequently with Frederick Poris ("Poris"), the president *142 of Belyn Corporation ("Belyn"), a consulting firm, about various investment opportunities. In the course of one of these conversations, Poris told Jasper that an acquaintance, Donald Quest, wanted to form a partnership to exploit some oil and gas leases in Kansas. When Jasper informed Poris that several of his clients would probably be interested in such a venture, Poris asked Jasper to serve as the prospective partnership's accountant and to help find a general partner for the partnership. Jasper agreed to do so. In September 1979, Jasper asked petitioner if he would serve as the general partner. Gevirtz initially expressed concern about performing in this capacity because of his inexperience in both partnership and oil and gas matters. Jasper assured petitioner that there was no need for concern since Jasper would be the partnership's accountant and, if necessary, petitioner could employ Poris or his corporation to assist in carrying out his duties as general partner. With these assurances petitioner agreed to serve as the partnership's general partner. Later in the fall of 1979, Gevirtz agreed to employ Belyn to assist him in his duties as general partner. Belyn agreed to *143 assist Gevirtz for the life of the partnership provided that Belyn received a "very significant portion" of the guaranteed payment to be paid by the partnership to Gevirtz as a general partner. The Limited Partnership Agreement ("Partnership Agreement") of Crest Oil Partners Limited ("Crest") was executed by Gevirtz, as general partner on December 13, 1979. Jasper and Poris were present at the execution of the Partnership Agreement. As Crest's general partner, Gevirtz immediately received a guaranteed payment of $80,000. The guaranteed payment was paid by Crest with three checks made to Gevirtz in the amounts of $65,000, $10,000 and $5,000. Pursuant to a prearranged oral agreement between Poris, Jasper and Gevirtz, the $65,000 check was immediately endorsed by Gevirtz and given to Belyn as consideration for Belyn's agreement to assist Gevirtz in the performance of his duties as general partner. The $10,000 check was immediately endorsed by Gevirtz and given to Crest as Gevirtz's partnership investment. Gevirtz retained the $5,000 check and deposited it in his bank account. None of the limited partners in Crest knew of the agreement between Gevirtz, Jasper and Poris under which *144 Gevirtz was to pay Belyn $65,000 out of the guaranteed payment. Petitioner never asked for, received nor expected reimbursement for the $65,000 payment because it was his understanding that the payment was his sole responsibility. Neither the Partnership Agreement nor the private placement memorandum used by Crest to sell limited partnership interests refers to the agreement to pay Belyn the $65,000. In pertinent part the Partnership Agreement reads as follows: Section 3. CAPITAL OF THE PARTNERSHIP 3.1 General Partner.
* * * (b) The General Partner or any Affiliate thereof may, but shall have no obligation to, advance any monies to the Partnership required to pay the capital requirements and operating expenses of the Partnership which were not initially funded from the contribution for Limited or General Partner Units by Partners or are not otherwise funded from the cash available to the Partnership. Such capital requirements and operating expenses shall include, but are not limited to, Lease payments, costs of any repairs, maintenance or rehabilitation of Partnership property and expenses such as taxes and management fees.The aggregate sums so advanced, *145 if any, shall become an obligation of the Partnership to the lender, and may be evidenced by a promissory note of the Partnership signed by the General Partner. The sums advanced shall be repaid with interest at the rate of ten (10%) percent per annum, or the maximum legal rate, if less, at such time or times as sufficient cash is available to the Partnership to permit such repayment without impairing the solvency of the Partnership; except that any unpaid advances shall immediately become due and payable upon dissolution and termination of the Partnership. Advances under this subparagraph shall be accounted for as loans and not as capital contributions to the Partnership.
* * * SECTION 7. RIGHTS, POWERS AND DUTIES OF THE GENERAL PARTNER * * * 7.1(b)(vi) To employ from time to time persons, firms or corporations for the operation and management of the Partnership business, including, but not limited to, attorneys, accountants, advisors, supervisory and managing agents, property managers and personnel, financial consultants, engineers, geologists, insurance brokers, securities brokers and dealers and loan brokers on such terms and for such compensation as *146 the General Partner may determine. The General Partner is hereby specifically authorized in its sole and absolute discretion to employ the General Partner or its Affiliates, to perform services and/or supply goods to the Partnership as provided in, and subject to, the provisions of this Agreement, and is specifically authorized to enter into the Turnkey Drilling Contract and the Operating Agreement described in the Memorandum with an Affiliate of the General Partner or any other person for the drilling of the Well and operation and supervision of such Well. Compensation connected with such employment shall be an expense of the Partnership.
* * * (viii) To pay and be reimbursed by the Partnership for expenses and fees incurred by the General Partner in connection with the organization and formation of the Partnership, the admission and substitution of Limited Partners, the preparation and filing of amendments of this Agreement, the holding of meetings of Limited Partners and the obtaining of action by Limited Partners without a meeting. * * * 7.2 Transactions with General Partner or its Affiliates
* * * (g) Nothing herein shall preclude reimbursement for reasonable *147 and necessary out-of-pocket Partnership business expenses paid by the General Partner or its Affiliates which are not otherwise provided in this Agreement. [Emphasis supplied.] The services to be performed under the contract between Gevirtz and Belyn were performed by Poris as Belyn's president. The bulk of such services were performed in the first few years of Crest's existence, although Belyn continued to perform insignificant services up to the date of trial. Both Gevirtz and Belyn testified that they anticipate Belyn will continue to render services to Crest in the future; but these services are not expected to be of any real significance. On their 1979 income tax return petitioners reported $10,010.91 in income from Crest. In his notice of deficiency, respondent determined that the entire guaranteed payment of $80,000 was income to petitioners in 1979. Petitioners contend that if the guaranteed payment is found to be income they are entitled to deduct the $65,000 paid to Belyn as a business expense under section 162(a). OPINION Section 162(a) allows as a deduction from gross income all "ordinary and necessary expenses paid or incurred during the taxable year in *148 carrying on any trade or business." The deduction includes "a reasonable allowance for salaries or other compensation for personal services actually rendered." Section 162(a)(1). The deduction allowed by section 162(a) like other deductions is a matter of legislative grace, and petitioners have the burden of proving their right to claim the same. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners contend that the payment to Belyn is deductible under section 162 because the expense paid by Gevirtz was incurred in Gevirtz' trade or business of being a general partner. Respondent, on the other hand, argues that petitioner is not entitled to the deduction because under the Partnership Agreement such an expense was a partnership obligation and Gevirtz was not required to pay it; and furthermore if he voluntarily paid such an expense he was entitled under the Partnership Agreement to reimbursement. We agree with the respondent. Petitioner's argument fails to recognize that under Section 7 of the Partnership Agreement he, as the general partner, had the right, power, and duty to employ on whatever terms and at whatever compensation he should determine *149 any advisor, supervisor, managing agent or financial consultant needed in "the operation and management of the Partnership business," and that any "compensation connected with such employment shall be an expense of the Partnership." The argument also fails to recognize that under Section 3 of the Partnership Agreement any of his personal funds which were voluntarily used to pay any partnership expense would be considered an advance or loan to the partnership and would be repaid by the partnership together with interest at 10 percent per annum or the maximum legal rate if less. In view of these provisions in the Partnership Agreement it is apparent any compensation due Belyn was a partnership obligation. It is equally apparent that petitioners' contention must fail because it does not comply with the well settled principle that a partner is not entitled to a deduction for a partnership expense paid with his own funds unless he is required by the partnership agreement to pay the partnership expense. See, e. g., Cropland Chemical Corp. v. Commissioner,75 T.C. 288, 295 (1980), affd. in an unpublished opinion *150 665 F. 2d 1050 (7th Cir. 1983); Graham v. Commissioner,35 T.C. 273, 278 (1960); Wallendal v. Commissioner,31 T.C. 1249 (1959); Klein v. Commissioner,25 T.C. 1045, 1051-1052 (1956). Furthermore, petitioners have failed to produce any evidence that the payment of the partnership expense was pursuant to a routine partnership business practice under which partnership expenses were paid by the partner without reimbursement. Cf. Klein v. Commissioner,25 T.C. 1045 (1956). We conclude, therefore, that petitioners are not entitled to deduct the payment by Gevirtz to Belyn because his personal payment of such expense was not required by the Partnership Agreement or by any routine partnership business practice that was tantamount to such an agreement. [2]
Respondent's determination that petitioners are liable for the addition to tax for negligence under section 6653(a) is presumptively correct and the burden of proving *151 that the determination is erroneous is upon petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In defense to the negligence claim, petitioners point to Gevirtz's inexperience in partnership matters and his reliance upon the advice of his accountant, Baron Jasper, that the Belyn payment was a deductible business expense. Jasper is an experienced accountant and from his testimony as well as that of Gevirtz we are satisfied that Gevirtz did in fact rely upon his advice in good faith. Under these circumstances, we conclude that the underpayment of tax was not due to petitioners' negligence or their intentional disregard of rules and regulations. Conlorez Corp. v. Commissioner,51 T.C. 467, 475 (1968). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. In the alternative, respondent argues that the payment was a nondeductible capital expenditure but in view of our conclusion on his first argument we need not consider the alternative.↩