T.C. Memo. 1997-61


UNITED STATES TAX COURT


DAVID E. AND MARY R. PRICE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7902-95.          Filed February 3, 1997.


<u>David E. Price</u> and Mary R. Price, for petitioners.

<u>Jennifer H. Decker</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notice of deficiency dated February 15, 1995, respondent determined deficiencies in and an addition to petitioners' Federal income taxes as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|---------------------------------|

| 1990 | $8,085 | -- |
| 1991 | 12,289 | $863 |
| 1992 | 10,239 | -- |

Respondent has conceded that petitioners are not liable for the section 6651(a)(1) addition to tax. In an amendment to her answer, respondent asserted for the first time that petitioners, pursuant to section 6662(a), are liable for negligence penalties of $1,617, $2,458, and $2,048 for years 1990, 1991, and 1992, respectively.

Unless otherwise indicated, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are as follows:

1. Whether petitioners are entitled to claimed bad debt deductions. We hold they are not.

2. Whether petitioners are entitled to claimed deductions for unreimbursed partnership expenses. We hold they are not.

3. Whether petitioners, pursuant to section 6662(a), are liable for an accuracy-related penalty for negligence. We hold they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Santa Claus, Indiana.

David E. Price (petitioner) has been an attorney since 1970. Between 1970 and 1977, he served as an attorney for the Internal

Revenue Service in District Counsel's offices in Virginia and Indiana. In 1978, he opened a private law practice in Dale, Indiana. Since 1978 and during all relevant years, petitioner's practice was conducted as a partnership known as Price & Bradley, in which petitioner held a 51-percent interest.

In the early years of petitioner's practice, Walter Scott Taylor, Sr., Walter Scott Taylor, Jr., and Brenda Fant Taylor were petitioner's primary clients. The Taylors were successful Indiana coal mine owners, and petitioner handled all of their legal affairs.

In 1979, the Taylors acquired an interest in Speedmart, Inc. (Speedmart), an Indiana corporation. Speedmart operated a convenience store located in Cannelton, Indiana. The Cannelton store had lost money every year since it opened. The Taylors owned a majority of Speedmart's outstanding shares. Petitioner owned 20 percent of Speedmart's shares, which he acquired as compensation for legal services rendered.

In 1982 or 1983, the Taylors moved their residence and coal mining activities to Alabama, and petitioner took over the day-to-day management of Speedmart. Petitioner served as president and a director of Speedmart. In addition, he was the manager of the Cannelton store. Speedmart was authorized to pay petitioner an annual salary of $18,000, but Speedmart never made any salary payments to petitioner.

In an attempt to make Speedmart profitable, petitioner, in 1982 and 1983, expanded Speedmart's operations from one convenience store to five, installed gas pumps and food concessions at each location, opened the stores 24 hours a day, 7 days per week, and hired a general manager. Even after these changes, Speedmart continued to lose money. On June 24, 1985, Speedmart filed for protection from creditors under chapter 11 of the United States Bankruptcy Code. A plan of reorganization was confirmed on June 8, 1988. Petitioner closed and sold Speedmart's four unprofitable stores and tried to make the remaining store profitable.

In 1990, 1991, and 1992, petitioner made several advances of funds to Speedmart and creditors of Speedmart. Petitioner was advised by a bankruptcy attorney that his advances to Speedmart must be in the form of a loan. In December of 1991, petitioner executed, on behalf of Speedmart, a one-page document entitled "continuation of 1985 promissory note" (the 1991 Note). In it, Speedmart promised to repay "All sums advanced in cash and inventory". The terms called for 8-percent interest and repayment of principal 30 days following demand.

Petitioner's effort to revive Speedmart was unsuccessful, and the remaining store continued to lose increasing amounts of money. In 1992, Speedmart sold the store to a competitor, and the proceeds were used to partially repay Speedmart's priority creditors. Unsecured creditors received no repayments.

Petitioner claimed on his 1990, 1991, and 1992 returns deductions relating to his 1990, 1991, and 1992 advances to Speedmart. He reported bad debt expenses of $24,000, $34,103, and $28,000 on his Schedules C (Profit or Loss From Business (Sole Proprietorship)) for 1990, 1991, and 1992, respectively. Petitioner also claimed, for 1990, 1991, and 1992, unreimbursed partnership expenses of $500, $500, and $1,000, respectively.

On February 15, 1995, respondent issued a notice of deficiency disallowing the claimed deductions. By amendment to her answer, respondent asserted a negligence penalty for each year.

OPINION

I. Bad Debt Deductions

Section 166(a) allows a deduction for debts that become worthless during the taxable year. By contrast, capital contributions are not deductible under section 166(a). See, e.g., Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 284 (1990). For purposes of section 166(a), the term "debt" includes only bona fide debts. Sec. 1.166-1(c), Income Tax Regs. According to the regulation, "A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Id. Consequently, we must determine whether petitioner's advances to Speedmart were made in exchange for bona

fide debt or equity. This is a factual determination, and petitioner bears the burden of proof. Rule 142(a).

Petitioner has not established that the 1990, 1991, and 1992 advances were made in exchange for Speedmart's bona fide indebtedness. A bankruptcy attorney advised petitioner that capital contributions would violate the Bankruptcy Court's orders. Petitioner contends that he followed this advice and made the advances "in the form of unsecured notes". We, of course, are not bound by the form of petitioner's transaction. See, e.g., Gregory v. Helvering, 293 U.S. 465, 469 (1935).

Petitioner did not produce any notes or other documents evidencing loans for which he claimed deductions in 1990, 1991, and 1992. He did introduce the 1991 Note, but it does not specifically reference any particular advances. Even if we were to assume that the 1991 Note was meant to evidence transfers made during the years in issue, petitioner did not establish, or even assert, that he had demanded repayment and that Speedmart had refused. In addition, Speedmart did not make interest payments in accordance with the terms of the 1991 Note. Petitioner has conceded that his advances were unsecured and that Speedmart was inadequately capitalized.

After considering the factors relevant to this case, see Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980), and cases cited therein, we conclude that petitioner has failed to carry his burden of proving that he advanced funds in exchange

for bona fide indebtedness from Speedmart. Accordingly, we sustain respondent's determination on this issue.

II. Unreimbursed Partnership Expenses

A partner generally cannot directly deduct on his income tax return the expenses of the partnership. See Cropland Chem. Corp. v. Commissioner, 75 T.C. 288, 295 (1980). The exception to this rule is where there is an agreement among the partners that such partnership expenses shall be borne by particular partners out of their own funds. Id. Where the exception applies, the partner is entitled to deduct the amount of the expense from his individual gross income.

Petitioner claimed on his individual income tax return deductions for expenses incurred for entertainment and travel related to partnership business. Petitioner bears the burden of proving that he is entitled to the claimed deductions. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In addition, entertainment and travel expenses are subject to the substantiation requirements of section 274(d). That section provides that no deduction shall be allowed for travel and entertainment expenses unless the taxpayer provides adequate records to corroborate his deductions. Petitioner has produced no records to substantiate his claimed deductions. Therefore, we conclude that petitioner has not carried his burden of proving that he is entitled to claimed deductions for travel and entertainment expenses.

III.  Negligence Penalty

Section 6662 imposes an accuracy-related penalty equal to 20 percent of any underpayment attributable to negligence.  The term "negligence" is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Where the taxpayer is a tax attorney, he may be held to a higher standard of reasonableness than a person lacking in tax expertise.  Tippin v. Commissioner, 104 T.C. 518, 534 (1995).  Because respondent initially raised the penalty in an amendment to her answer, respondent bears the burden of proof.  Rule 142(a).

Petitioner's deductions clearly were not allowable under relevant statutes and case law.  As a result, we conclude that petitioner, an experienced tax attorney, did not exercise the care that an ordinarily prudent tax attorney would have exercised under the circumstances.

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.