Albert A. STEVENS, Plaintiff–
Appellee, Cross–Appellant,

v.

UNITED STATES of America,
Defendant–Appellant,
Cross–Appellee.

Nos. 94–1785, 94–1904.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1994.

Decided March 3, 1995.

Lewis M. Porter, Jr. (argued), Laidley, Sutter, Porter & Dempsey, Libertyville, IL, for Albert A. Stevens.

Kurt Lindland, Office of U.S. Atty., Crim. Div., Chicago, IL, Teresa T. Milton (argued), William S. Estabrook, Eugene J. Rossi, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for U.S. in No. 94–1904.

Kurt Lindland, Office of U.S. Atty., Crim. Div., Chicago, IL, Gary R. Allen, Teresa T. Milton (argued), William S. Estabrook, Marion E. Erickson, Eugene J. Rossi, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, James B. Burns, Office of U.S. Atty., Chicago, IL, for U.S. in No. 94–1785.

Before POSNER, Chief Judge, and COFFIN * and BAUER, Circuit Judges.

* Hon. Frank M. Coffin of the First Circuit.

POSNER, Chief Judge.

Before us are cross-appeals in a taxpayer's suit for refund. The facts are not in dispute. The New Horizons Color Corporation failed to collect and pay over to the Internal Revenue Service federal employment taxes that it owed. The government assessed the unpaid taxes due, then served a notice of levy both on New Horizons and on a bank that was the trustee, under an Illinois land trust, of a building of which New Horizons was the beneficial owner under the trust. The notice of levy listed as due to the government from New Horizons both the unpaid employment taxes themselves and statutory additions to the taxes—interest and also penalties imposed by 26 U.S.C. § 6672(a)—that had accrued since the assessment but that had not been separately assessed. The government scheduled a public sale of the building, but before it took place New Horizons found a private buyer willing to pay more than the public sale was likely to bring. The government agreed to allow the private sale to be completed, provided it received the net proceeds of the sale.

■ Enter the taxpayer in this case, Albert Stevens, president of New Horizons. When he received the check from the buyer of the building he endorsed it to the Internal Revenue Service but wrote under his signature, "Endorsement of this check constitutes application of the proceeds to trust fund taxes first; balance, if any, to non trust fund taxes, interest and penalties." The reason for the restriction was that Stevens was a "responsible person" within the meaning of the provision of the Internal Revenue Code (the same 26 U.S.C. § 6672(a)) that makes certain corporate officers personally responsible for the corporation's failure to collect or pay federal employment taxes. (These are called "trust fund taxes" because the employer is required to segregate them from its other assets until paying them over to the IRS.) As a responsible person, Stevens was liable for a penalty equal to the amount of New Horizon's unpaid taxes, and he wanted to minimize that liability. The government's policy is not to collect, in penalties from responsible persons, an amount greater than the amount of the trust fund taxes that re-main unpaid. IRS Policy Statement P-5-60, 1 *CCH Internal Revenue Manual* 1305-14 (1993); *United States v. Sotelo,* 436 U.S. 268, 279 n. 12, 98 S.Ct. 1795, 1802 n. 12, 56 L.Ed.2d 275 (1978); *United States v. Security Pacific Business Credit, Inc.,* 956 F.2d 703, 705 (7th Cir.1992). So the less that is unpaid, the smaller the penalty is; and so the more that New Horizons was credited with paying on account of those taxes, the less would Stevens's personal liability be. Suppose New Horizons owed $50,000 in unpaid trust fund taxes and $40,000 in interest and penalties, and received $30,000 from the sale of the building. If the sale proceeds were credited against the unpaid trust fund taxes, they would reduce Stevens's potential liability as a responsible person to $20,000 ($50,000–$30,000). But if they were credited instead against the $40,000 in interest and penalties owed by New Horizons, Stevens's potential liability as a responsible person would remain $50,000.

■ The Internal Revenue Service crossed out the restrictive language under Stevens's endorsement, deposited the check, and, in accordance with its normal practice, *United States v. Schroeder,* 900 F.2d 1144, 1146 n. 1 (7th Cir.1990); *In re Avildsen Tools & Machine, Inc.,* 794 F.2d 1248, 1251 (7th Cir.1986), applied the money first to the unpaid *non*-trust-fund taxes due from New Horizons—concretely the interest on, and the penalties for, New Horizons' unpaid taxes. (Interest and penalties are not deemed trust fund taxes even when they are interest on, and penalties for late payment of, trust fund taxes. *Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1191 (7th Cir.1989).) The government's motive was transparent but not disreputable. Every dollar it allocated to trust fund taxes would reduce by one dollar the amount it could collect in penalties from the responsible person, while every dollar it allocated to non-trust-fund taxes would reduce the unpaid amount of those taxes by one dollar. Recurring to our numerical example, and assuming that New Horizons had no assets other than the proceeds of the sale of the building, the IRS would collect $80,000 ($30,000 from the proceeds and $50,000 from Stevens) of the $90,000 owed it if it credited

the proceeds of the sale against the non-trust-fund amounts owed by New Horizons, but only $50,000 ($30,000 from the proceeds and $20,000 from Stevens) if it credited the proceeds of the sale against the trust fund taxes owed by New Horizons.

Stevens paid some of the penalties, then brought this suit for refund. The government counterclaimed for the balance of the penalties.

■■■ A debtor who, owing money to a creditor on two or more debts, makes a voluntary payment to the creditor is permitted to allocate the payment among the debts. This is the common law rule, *Restatement (Second) of Contracts* § 258(1) (1981), and also the rule in federal tax cases. *In re Avildsen Tools & Machine, Inc., supra,* 794 F.2d at 1251; *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983); *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 801 (9th Cir.1987). The idea, which is as applicable to tax cases as to cases involving private debts, is to encourage the voluntary payment of debts, which saves the creditor the costs of collection and delay and thus confers upon him a benefit for which the right of allocation is modest compensation. Cf. *In re Avildsen Tools & Machine, Inc., supra,* 794 F.2d at 1251. The district judge ruled, however, that the payment that New Horizons made to the Internal Revenue Service of the proceeds of the sale of the building was involuntary, so the Service was free to allocate the proceeds in the manner that it did—with one crucial exception. It could not, the judge ruled, allocate any part of the proceeds to the statutory additions to tax, because they had not been assessed, even though they had accrued. The government appeals from this ruling, Stevens from the ruling that the payment to the government of the proceeds of the sale was involuntary. (There was no reason for Stevens to appeal. He seeks no change in the district court's judgment.) If Stevens is right and the payment was voluntary, the government's appeal is moot, so we start with the issue of voluntariness.

■■■ "Voluntary" is a word of many meanings. *Johnson v. Trigg,* 28 F.3d 639, 641–42 (7th Cir.1994). In one of them, what Stevens did when he sold New Horizons' building and endorsed the check for the purchase price to the Internal Revenue Service was voluntary, just as in one sense of "voluntary" the victim of an armed robbery who in response to the robber's telling him "Your money or your life" willingly, indeed eagerly, hands over his money is acting voluntarily. But the purpose of the "voluntary payment" rule as we have sketched it shows that this is not the relevant meaning. "Voluntary" here carries a little of the sense of "volunteer" and is to be contrasted with the situation in which actions by creditors leave the debtor with no realistic choice but to make a payment. *In re Avildsen Tools & Machine, Inc., supra,* 794 F.2d at 1251; cf. *In re Ribs–R–Us, Inc.,* 828 F.2d 199 (3d Cir.1987). Of course, a person who pays a lawful debt is not *really* a volunteer, not in the sense that an altruist or a good Samaritan is; he is subject to being coerced to pay it. But as realists about the procedures for the collection of debts we know that debtors can often impose heavy costs on their creditors by dragging their heels in payment. A debtor who forgoes efforts to impose those costs is exercising a choice, and it is a choice that the law wants to encourage in order to minimize the costs of the debt-collection process.

We have stated the issue of voluntariness as if it were a dichotomy, but actually we are dealing with a continuum—with an issue of more or less: more or less promptness in the payment of taxes or other debts before the full coercive machinery of collection is brought to bear. Determining the location of a specific constellation of facts on the continuum involves the sort of particularistic judgment that an appellate court reviews for clear error. *Williams v. Commissioner,* 1 F.3d 502, 505 (7th Cir.1993); but see *In re Ribs–R–Us, Inc., supra,* 828 F.2d at 202. The question then is whether the district judge clearly erred in concluding that the payment of the proceeds of the sale to the Internal Revenue Service was involuntary within the meaning of the rule that allows the taxpayer to allocate his voluntary but not his involuntary payments of taxes. On the one hand, it is clear that had the sale been made pursuant to the levy, the payment to

the IRS would have been deemed involuntary. *Muntwyler v. United States, supra,* 703 F.2d at 1032–33. On the other hand, we have rejected the suggestion "that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due." *Id.* at 1033. We have an intermediate case here, a close call; in such cases the principle of deferential review has real bite.

The judge did not clearly err, and his finding therefore binds us. The IRS had seized the building and was about to sell it at a public auction. With the building lost, Stevens's interest was in getting the highest price, since the more the IRS obtained from the sale the less Stevens's potential liability as a responsible person would be. Even after the proceeds were applied first to interest and penalties, enough was left over to reduce the amount of penalty due from Stevens as a responsible person. How much his personal liability would be reduced would depend on whether he had the right of allocation that he claims; but his lawyer conceded at argument that Stevens was better off the higher the price realized by the sale. Stevens had cast about for a private buyer and had found one who would pay more than the public auction was likely to fetch. There was nothing "voluntary" about this course of conduct. Stevens's back was against the wall. The building was going to be sold for the benefit of the IRS whatever he did, and rather than "volunteering" anything he was trying to minimize his personal liability by maximizing the proceeds of the sale. Recurring to the purpose of the right to allocate a voluntary payment, we can see that the right was not necessary to induce Stevens to make the private sale; he had ample incentive to do so without any such inducement.

 He argues that he saved the IRS a lot of money, not only because the private sale of New Horizons' building fetched a higher price than the public auction was likely to do (a point that cannot carry the day for him, as we have just seen), but also because it saved the IRS the cost of foreclosing on the building. He tries to bolster the second argument by pointing out that under Illinois's system of land trusts, New Horizons did not own the building in fee simple; it had only a beneficial interest, and the law of Illinois classifies that interest as a form of personal rather than real property. And this is true. 765 ILCS 430/1; *Kramer v. Exchange National Bank,* 118 Ill.2d 277, 113 Ill.Dec. 248, 249–50, 515 N.E.2d 57, 58–59 (1987). Only we do not see the force of the point. The Illinois land trust (on which see generally *LaSalle National Bank v. 53rd–Ellis Currency Exchange,* 249 Ill.App.3d 415, 188 Ill.Dec. 533, 543–44, 618 N.E.2d 1103, 1113–14 (1993)) is a method of financing, very similar to a mortgage. 765 ILCS 415 ("Land Trustee as Creditor Act"); *Hartford Accident & Indemnity Co. v. Sullivan,* 846 F.2d 377, 379 (7th Cir.1988). The "trustee"—a bank or other lender—corresponds to the mortgagee and the owner of the beneficial interest to the mortgagor. When the beneficial interest is sold it is sold subject to the lender's security interest, just as when a mortgagor sells mortgaged property the sale is subject to the mortgage. It is no more difficult to sell the beneficial interest in a land trust than it is to sell a fee simple encumbered by a mortgage. *LaSalle National Bank v. 53rd–Ellis Currency Exchange, supra,* 188 Ill.Dec. at 544, 618 N.E.2d at 1114. The IRS was all set to sell New Horizons' beneficial interest at a public auction. Stevens has given us no grounds for believing that this mode of sale would somehow not have "worked" because of peculiarities of the land-trust system, or even that it would have cost more than a private sale.

The IRS derived a benefit from the private sale; it got more money, a little sooner, to apply to New Horizons' tax liabilities. But the fact that a taxpayer's action in paying a portion of the taxes that he owes confers a benefit on the IRS is not by itself sufficient proof that he was acting voluntarily, especially when the "voluntary" act comes only days before a decidedly involuntary act (the public auction) the threat of which effectively compelled the taxpayer to turn "volunteer" in order to minimize his tax liability.

■ Having accepted the district court's resolution of the issue of voluntariness against the taxpayer, we turn to the issue of allocation. When the IRS received and deposited New Horizons' check (signed by Stevens), it had not made separate assessments of all the interest and penalties that had accrued as a consequence of New Horizons' failure to pay its federal employment taxes when due. Stevens argues that without making an assessment the IRS had no right to collect these statutory additions and therefore no right to allocate the proceeds of the sale of the building to them.

■ "Assessment" refers to the Internal Revenue Service's formal determination that a taxpayer owes it money. 26 U.S.C. § 6203; Patricia C. Morgan, *Tax Procedure and Tax Fraud* 210 (1990). It is a condition precedent to collecting a statutory addition, as distinct from a tax required to be reported on the taxpayer's return. See 26 U.S.C. §§ 6303(a), 6671(a); *Stallard v. United States,* 12 F.3d 489, 493 (5th Cir.1994); *Kuznitsky v. United States,* 17 F.3d 1029, 1032 (7th Cir.1994). What this has to do with the issue of allocation baffles us. The statutory additions had accrued; they were owed by the taxpayer to the government. Whether or not the government could force the taxpayer to pay them without the formality (little as it is—a notation in an IRS office) of an assessment, once the government succeeded in obtaining a payment from the taxpayer we have difficulty seeing why it could not allocate a portion of that payment to the debt for the statutory additions. It is true that *First National Bank v. United States,* 591 F.2d 1143, 1148–49 (5th Cir.1979), holds that in the case of a voluntary payment with no indication of the taxpayer's preferred allocation, the government may not allocate any part of the payment to "unmatured" debts of the taxpayer, as an unassessed statutory addition could be considered. See also *In re Avildsen Tools & Machine, supra,* 794 F.2d at 1251; *Muntwyler v. United States, supra,* 703 F.2d at 1032. But the qualification— *voluntary* payment—is vital. The rule applied in *First National Bank* is a complement to the rule allowing the taxpayer to allocate a voluntary payment. The complement is designed for the case where the

payment is voluntary in the relevant sense but the taxpayer fails to make the allocation when he makes the payment. He is allowed to determine later that the payment shall not be allocated to his unmatured debts to the government. The rule does not apply here because the payment was not voluntary.

And if it did apply, it would not help the taxpayer, because there *was* an assessment. The assessment, which preceded the notice of levy and hence the endorsement of the check from the building's buyer, was an assessment of the unpaid taxes *plus interest and penalties.* The amount was not stated. Of course not. It would depend on when the taxes were paid. Both the interest and the penalties were proportionate to the amount of time that elapsed between the assessment of the unpaid taxes and the payment of the assessed amount, though in the case of the penalties there is a cut off after a fixed period—they accrue as a fixed monthly percentage until they reach a ceiling specified in the statute. 26 U.S.C. §§ 6651(a), 6656(a). Since the statutory additions grow at a rate fixed in the statute, the taxpayer knows what he owes from day to day. Therefore no purpose would be served by requiring the IRS to make continuous assessments as a condition of collecting the additions, cf. *Sage v. United States,* 908 F.2d 18, 21–22 (5th Cir.1990)—a procedure that would strain the Internal Revenue Service's resources and test its competence.

■ It is true, as Stevens argues, that statutory additions not only must be assessed before they can be collected—but we have just held that they can be assessed in advance, without being liquidated—but can be collected only upon notice and demand. 26 U.S.C. § 6671(a). But just as we think the original assessment of the unpaid employment taxes carried over to statutory additions incontestably owed and mechanically computable, so we think that communication of the assessment in the notice of levy (of which Stevens received a copy) constituted all the notice and demand that the statute requires or that the practicalities of administering the federal tax laws permit.

But even if everything that we have said so far on the issue of assessment is wrong, Stevens must lose. It is only when the government wants to proceed administratively, as by filing a tax lien, that notice and demand are required. *Jersey Shore State Bank v. United States,* 479 U.S. 442, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987); *Purcell v. United States,* 1 F.3d 932, 941 (9th Cir.1993); *United States v. McCallum,* 970 F.2d 66, 69–70 (5th Cir.1992); *United States v. Chila,* 871 F.2d 1015 (11th Cir.1989). Their absence is irrelevant in a refund suit with counterclaim. The taxpayer knows how much he has paid in penalties and interest so far and the counterclaim has informed him of how much more the government thinks is due it. Stated differently, there was no prejudice to Stevens from the lack (if there were a lack, which there is not) of notice and demand, as there would have been had the government levied on his assets without notice and demand, depriving him of the use of his property without any advance warning. It is to head off such deprivations that notice and demand are required. We used to think differently, *United States v. Associates Commercial Corp.,* 721 F.2d 1094, 1098 (7th Cir.1983), but it is generally and we think correctly believed that our decision in *Associates Commercial Corp.* did not survive *Jersey Shore State Bank.* See *Purcell v. United States, supra,* 1 F.3d at 941 n. 6; *United States v. McCallum, supra,* 970 F.2d at 70. Even before *Jersey Shore State Bank,* we had begun to inch away from *Associates Commercial Corp.* See *United States v. Friedman,* 739 F.2d 252, 256 (7th Cir.1984).

The taxpayer's appeal is denied, but the government's is allowed and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.