*Decision will be entered under Rule 155.*

JAMES W. TIPPIN AND BILLIE R. TIPPIN, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 25076–92.       Filed April 27, 1995.

*James W. Tippin,* pro se.
*Charles J. Graves,* for respondent.

OPINION

JACOBS, *Judge:* Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes:

| | | Additions to tax | | | Accuracy-related penalty |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6661 | Sec. 6662(a) |
| 1988 | $7,879 | $1,970 | $1,219 | $1,970 | - - - |
| 1989 | 14,274 | 714 | - - - | - - - | $2,855 |
| 1990 | 17,079 | - - - | - - - | - - - | 3,416 |

After concessions,[1] the issues for decision are: (1) Whether petitioners are entitled to Schedule C deductions for bankruptcy court-ordered adequate protection payments made during 1988, 1989, and 1990; (2) whether petitioners are entitled to Schedule C deductions for wages paid during 1988, 1989, and 1990 in excess of the amounts allowed in the notice of deficiency; (3) whether petitioners are entitled to Schedule C deductions for unemployment taxes and the employer's portion of employment taxes paid during 1989 and 1990 in excess of the amounts allowed in the notice of deficiency; (4) whether petitioners are liable for section 6651(a)(1) additions to tax for filing delinquent 1988 and 1989 returns; (5) whether petitioners are liable for the addition to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(a)(1) for 1988, and for the accuracy-related penalty for negligence under section 6662(a) for 1989 and 1990; and (6) whether petitioners are liable for the addition to tax for substantial understatement pursuant to section 6661 for 1988.

Unless otherwise indicated, all section and chapter references are to the Internal Revenue Code in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

The facts in this case have been fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

---

[1] By stipulation, the parties have agreed that the following are the correct amounts of unreported income, depreciation, and other deductions:

**1988**

| Item | Per return | Per stipulation |
|---|---|---|
| Total income | $71,902.00 | $71,910 |
| Car and truck expense | 2,000.00 | 800 |
| Mortgage interest | 10,937.15 | 9,883 |
| Utilities expense | 6,208.73 | 6,429 |
| Miscellaneous expenses | 6,179.76 | 6,180 |

**1989**

| Item | Per return | Per stipulation |
|---|---|---|
| Total income | 53,554.00 | 53,565 |
| Car and truck expense | 1,500.00 | 931 |
| Mortgage interest | 3,177.52 | 3,160 |
| Rent | 15,014.37 | 13,200 |
| Client advances | 4,231.50 | 4,420 |
| Miscellaneous expenses | 11,402.88 | 5,246 |

**1990**

| Item | Per return | Per stipulation |
|---|---|---|
| Car and truck expense | 2,500.00 | 1,277 |
| Utilities expense | 8,851.40 | 8,851 |
| Client advances | 17,136.69 | 14,004 |
| Miscellaneous expenses | 24,234.92 | 18,070 |

## Background

Petitioners James W. and Billie R. Tippin[2] resided in Leawood, Kansas, at the time they filed their petition.

Petitioners untimely filed Federal income tax returns for 1988 and 1989. Pursuant to extensions, petitioners' 1988 and 1989 Federal income tax returns were due on October 15, 1989, and August 15, 1990, respectively. Both returns were filed on September 4, 1990. Petitioners timely filed their 1990 Federal income tax return. Respondent timely mailed a notice of deficiency to petitioners for the years under consideration.

Petitioner is an attorney who operates his law practice as a sole proprietorship. During the years under consideration, he had six employees. Petitioner's areas of expertise are tax and bankruptcy law. The income and deductions relating to petitioner's law practice were deducted on Schedules C attached to petitioners' Federal income tax returns.

### 1. Bankruptcy Proceedings

On November 18, 1987, and April 20, 1988, the Internal Revenue Service (IRS) filed Notices of Federal Tax Liens against petitioners in Johnson County, Kansas. The tax liens related to petitioners' unpaid Federal income tax liabilities, interest, and penalties for 1983, 1984, 1985, and 1986, totaling $67,153.74.

On June 29, 1988, petitioner filed for protection under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Kansas (bankruptcy court). At that time, receivables due petitioner's law practice totaled approximately $20,000. The IRS had a secured interest in all of these receivables.

On July 1, 1988, petitioner filed an "Application to Use Cash Collateral in the Ordinary Course of Business and Motion to Reduce Time for Notice and to Limit Notice" in the bankruptcy court. A hearing with respect to petitioner's application was held on July 11, 1988. At the hearing, petitioner requested that in the event adequate protection pay-

---

[2] Petitioner Billie R. Tippin is involved in this case by virtue of filing joint Federal income tax returns with her husband, James W. Tippin. The term "petitioner" shall refer to James W. Tippin.

ments[3] to the IRS were ordered, the payments be applied to petitioners' back taxes rather than to interest or penalties.

On September 10, 1988, the bankruptcy court entered an "Order of Adequate Protection and For Use of Cash Collateral". Among other things, the bankruptcy court's order provided that petitioner "shall be allowed to use cash collateral of the United States in the form of accounts receivable", and granted the IRS "a continuing interest in the debtor's accounts receivable". Pursuant to the order, petitioner was required to pay $850 per month to the IRS as adequate protection with respect to the law practice's receivables. The order did not mandate how the IRS was to apply the $850 payments.

In response to a request from the bankruptcy court, the United States/IRS filed a "Proof of Claim for Internal Revenue Taxes" on November 16, 1988 (amending and superseding a prior proof of claim filed on July 18, 1988). The proof of claim asserted that petitioners were liable for the following amounts as of the date of the bankruptcy petition:

| Tax period | Date tax assessed | Tax due | Penalty to petition date | Interest to petition date | Notice of lien filed |
|---|---|---|---|---|---|
| 12/31/83 | 4/28/86 | $1,739.50 | $3,411.87 | $5,209.59 | 11/18/87 |
| 12/31/84 | 7/27/87 | 12,259.00 | 6,507.39 | 5,711.78 | 11/18/87 |
| 12/31/85 | 2/15/88 | 11,725.00 | 5,010.41 | 3,334.46 | 4/20/88 |
| 12/31/86 | 2/22/88 | 12,470.00 | 4,468.10 | 1,874.07 | 4/20/88 |

On January 5, 1994, the bankruptcy court entered a decree closing the chapter 11 case.

Petitioner made the required adequate protection payments to the IRS during the years under consideration. These payments totaled $4,250 in 1988, $10,200 in 1989, and $9,350 in 1990. The IRS applied the payments first to

---

[3] "Adequate protection" is a term used in the Bankruptcy Code to describe protection provided to holders of secured claims in order to preserve a secured creditor's position. See 11 U.S.C. secs. 361 and 362 (1988). The concept of adequate protection is derived from the Fifth Amendment protection of property interests. *Wright v. Union Cent. Life Ins. Co.,* 311 U.S. 273 (1940); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555 (1935).

While the term "adequate protection" is not defined in the Bankruptcy Code or its legislative history, 11 U.S.C. sec. 361 sets forth three nonexclusive examples of what may constitute adequate protection: (1) Periodic cash payments equivalent to decrease in value; (2) an additional or replacement lien on the other property; or (3) other relief that provides the indubitable equivalent.

petitioners' 1983 and 1984 overdue taxes, then to penalties, and finally to interest, as follows:[4]

|  | 1983 | 1984 |
|---|---|---|
| Taxes | $1,725.00 | $12,229.00 |
| Penalties | 4,237.91 | 2,099.54 |
| Interest | 5,208.55 | - - - |

On Schedules C, petitioners deducted as interest all of the adequate protection payments made to the IRS.[5] Respondent disallowed the claimed interest deductions.

## 2. Wage Withholdings

Petitioners are cash basis taxpayers. Petitioners deducted the gross wages paid to petitioner's employees on Schedules C. These deductions were $47,867 for 1988, $59,303 for 1989, and $92,470 for 1990. Respondent reduced the claimed wage deductions to $42,612 for 1988, $50,668 for 1989, and $85,204 for 1990.

The records of petitioner's law practice indicate that petitioner paid his employees gross wages totaling $44,479 in 1988, $56,527 in 1989, and $88,380 in 1990. The difference between these amounts and the amounts allowed by respondent is attributable to taxes (namely, income taxes and Federal Insurance Compensation Act taxes) that petitioner withheld from his employees' wages during 1 year and paid to the IRS during the following year.

Respondent's adjustments were computed as follows:

|  |  | 1988 |
|---|---|---|
| Gross wages per return | - - - | $47,867 |
| Gross wages per records | $44,479 | - - - |
| Less: |  |  |
|    Unpaid income tax withholding | 355 | - - - |
|    Unpaid FICA tax withholding | 1,512 | - - - |
| Total | - - - | 42,612 |
| Adjustment to wage expense | - - - | 5,255 |

[4] There is no explanation in the record as to why the stipulated amount of the adequate protection payments is less than the amount the Internal Revenue Service (IRS) applied to the overdue taxes, penalties, and interest.

[5] Petitioners claimed a $10,200 interest deduction on the 1990 Schedule C. There is no explanation in the record as to why the amount of the deduction exceeds the amount actually paid in that year.

|  | *1989* |  |
|---|---|---|
| Gross wages per return | - - - | 59,303 |
| Gross wages per records | 56,527 | - - - |
| Less: |  |  |
|   Unpaid income tax withholding | 2,420 | - - - |
|   Unpaid FICA tax withholding | 3,439 | - - - |
|   Total | - - - | 50,668 |
| Adjustment to wage expense | - - - | 8,635 |

|  | *1990* |  |
|---|---|---|
| Gross wages per return | - - - | 92,470 |
| Gross wages per records | 88,380 | - - - |
| Less: |  |  |
|   Unpaid income tax withholding | 2,785 | - - - |
|   Unpaid FICA tax withholding | 3,614 | - - - |
|   Subtotal | 6,399 | - - - |
| Plus: |  |  |
|   1989 income tax withholding paid in 1990 | 1,142 | - - - |
|   1989 FICA tax withholding paid in 1990 | 2,081 | - - - |
|   Subtotal | 3,223 | - - - |
|   Total | - - - | 85,204 |
| Adjustment to wage expense | - - - | 7,266 |

## 3. *FICA and FUTA Taxes*

During the years under consideration, petitioner paid the employer's portion of the Federal Insurance Compensation Act (FICA) tax, as well as the Federal Unemployment Tax Act (FUTA) tax, with respect to wages of the employees of his law practice. On Schedules C, petitioners deducted as taxes $1,040.88 for 1989 and $8,176.91 for 1990. According to the IRS' transcripts of account and petitioner's employment and unemployment tax returns, Forms 941 (Employer's Quarterly Federal Tax Return) and 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return), petitioner paid the employer's portion of the FICA tax and the FUTA tax, in the total amounts of $969 for 1989 and $4,513 for 1990. Respondent disallowed the difference between the amounts stated in Forms 941 and 940 and those claimed on petitioners' Schedules C.

*Discussion*

*Issue 1. Adequate Protection Payments*

The first issue for decision is whether petitioners are entitled to deductions for bankruptcy-court-ordered adequate protection payments made during 1988, 1989, and 1990. Petitioners argue that the payments are deductible as business interest. In essence, petitioners assert that the adequate protection payments were made to the IRS in exchange for petitioner's use of the money collected from the law practice's accounts receivable. Petitioners argue that this money belonged to the IRS, and that petitioner obtained the use of the IRS' "money in exchange for a fee", a fee that constituted deductible business interest.

Respondent disagrees with petitioner's characterizing the adequate protection payments as interest, pointing out that the payments were applied by the IRS to reduce petitioners' liabilities for taxes, penalties, and interest. In addition, respondent contends that the IRS had the authority to allocate the adequate protection payments in the manner it did. Accordingly, respondent argues that the adequate protection payments must be analyzed according to the manner in which they were allocated by the IRS. Based upon such allocation, respondent contends that: (1) To the extent the payments were allocated to petitioners' unpaid and overdue income taxes, any deductions for the payments are disallowed under section 275; (2) to the extent the payments were allocated to penalties, they are nondeductible under section 1.162–21(a) and (b)(ii), Income Tax Regs.; and (3) to the extent the payments were allocated to interest, such interest is "personal" interest, the deduction of which is limited by section 163(h)(1).

A. *Characterization of Adequate Protection Payments*

Underlying the parties' differing positions is the proper characterization of petitioner's adequate protection payments. For the reasons which follow, we conclude that (1) the payments do not constitute interest and (2) the IRS had the authority to allocate the payments as it did.

### 1. *Payments Do Not Constitute Interest*

Adequate protection payments are cash payments that protect a secured party's interest in a debtor's property that is highly susceptible to devaluation while in possession of the debtor. *United Sav. Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988). Under Bankruptcy Code sec. 362(a)(3), 11 U.S.C. sec. 362(a)(3) (1988), the filing of a petition in bankruptcy automatically stays the secured creditor from any act to obtain possession of bankruptcy estate property or to exercise control over estate property. During the pendency of the automatic stay, the doctrine of adequate protection safeguards the interests of secured creditors in their collateral. Section 361 of the Bankruptcy Code states that adequate protection may be provided by:

> (1) requiring the trustee to make cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title * * * results in a decrease in the value of such entity's interest in such property;

Thus, an adequate protection payment is made to protect a secured creditor's interest in the event of a decrease in the value of the creditor's interest in the debtor's property. Contrary to petitioners' contention, an adequate protection payment is not equivalent to interest.

In *United Sav. Association v. Timbers of Inwood Forest Associates, Ltd., supra,* under section 362(d) of the Bankruptcy Code, which provides for adequate protection payments, the Supreme Court held that an undersecured creditor is not entitled to compensation, in the nature of interest, for the "use value" of the creditor's collateral during the period of the automatic stay. Similarly, in the present case, petitioner's adequate protection payments to the IRS did not constitute, as petitioners contend, interest for the use of the accounts receivable securing the IRS' claim in bankruptcy.

Although the IRS had a secured interest in the accounts receivable, it did not "possess" the accounts receivable, as petitioners argue. The accounts receivable were the property of the bankruptcy estate. As Bankruptcy Code section 541(a) provides, in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) * * * all legal or equitable interests of the debtor in property as of the commencement of the case.

In the instant case, it is clear that the receivables became the property of the bankruptcy estate at the time petitioner filed the bankruptcy petition. Thus, the accounts receivable were not the IRS' "money", as petitioners contend.

To summarize, the adequate protection payments were a substitute for the diminishing accounts receivable. The payments were made to protect and preserve the IRS' claims against the bankruptcy estate, rather than, as petitioners contend, as interest for the use of the IRS' money.

## 2. IRS Had Authority To Allocate Payments

Payments made to the IRS pursuant to a chapter 11 proceeding are involuntary.[6] *Fullmer v. United States,* 962 F.2d 1463, 1468 (10th Cir. 1992); see also *In re Ribs-R-Us, Inc.,* 828 F.2d 199, 203–204 (3d Cir. 1987); *DuCharmes & Co. v. United States,* 852 F.2d 194, 196 (6th Cir. 1988); *United States v. Technical Knockout Graphics, Inc.,* 833 F.2d 797, 802–803 (9th Cir. 1987). Here, petitioner's adequate protection payments to the IRS were involuntary. Therefore, the IRS had authority to apply the adequate protection payments to petitioners' prepetition 1983 and 1984 unpaid and overdue income taxes, penalties, and interest.[7]

---

[6] Our Court has defined an involuntary payment of Federal income taxes as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos v. Commissioner,* 47 T.C. 65, 69 (1966). A debtor may allocate voluntary but not involuntary payments. *Fullmer v. United States,* 962 F.2d 1463, 1468 (10th Cir. 1992); *DuCharmes & Co. v. United States,* 852 F.2d 194, 196 (6th Cir. 1988); *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir. 1964).

[7] Unless otherwise ordered by the court, involuntary payments may be credited as the IRS desires. *In re Ribs-R-Us, Inc.,* 828 F.2d 199, 210 (3d Cir. 1987); *Amos v. Commissioner, supra;* see also *Stevens v. United States,* 49 F.3d 331 (7th Cir. 1995); *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir. 1983). In the instant case, the bankruptcy court did not issue any order directing the IRS to specifically allocate the adequate protection payments that it received. Cf. *United States v. Energy Resources Co.,* 495 U.S. 545, 546 (1990).

We note that even where a payment is "voluntary", the IRS generally has a free hand over its allocation if the taxpayer makes no request, direction, or designation concerning how the money is to be applied. See *Wood v. United States,* 808 F.2d 411, 416 (5th Cir. 1987). Based on the facts recited herein, it does not appear that petitioner directed the IRS to apply the adequate protection payments against his interest liability first. To the contrary, it appears that he asked that the payments be used first to reduce his liability for back taxes. See *supra* p.

## B. *Adequate Protection Payments Applied to Back Taxes*

The IRS applied $13,954 of the adequate protection payments to petitioners' 1983 and 1984 unpaid and overdue Federal income taxes. Section 275 specifically provides that no deduction shall be allowed for the payment of Federal income taxes. Accordingly, the portion of the adequate protection payments that was applied to back taxes is not deductible.

## C. *Adequate Protection Payments Applied to Penalties*

The IRS applied $6,337.45 of the adequate protection payments to penalties arising from petitioners' underpayment of 1983 and 1984 taxes.

Section 162(a) generally permits deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Section 162(f) excepts from this general rule "any fine or similar penalty paid to a government for the violation of any law." Section 162(f) requires the disallowance of civil sanctions imposed for the purpose of enforcing the law and as punishment for violation thereof. *Huff v. Commissioner,* 80 T.C. 804, 821–824 (1983); *Southern Pac. Transp. Co. v. Commissioner,* 75 T.C. 497, 646–652 (1980). Section 1.162–21(b)(1)(ii), Income Tax Regs., defines the statutory language "fine or similar penalty" to include moneys "Paid as a civil penalty imposed by Federal, State or local law, including additions to tax and additional amounts and assessable penalties imposed by chapter 68 of the Internal Revenue Code of 1954". Accordingly, the portion of the adequate protection payments that was applied to penalties arising from petitioners' 1983 and 1984 underpayments is not deductible.

## D. *Adequate Protection Payments Applied to Interest*

The IRS applied $5,208.55 of the adequate protection payments to interest on petitioners' underpayment of taxes.

---

521.

The IRS has stated in Rev. Rul. 73–305, 1973–2 C.B. 43, that it can offset the oldest credit or payment for the taxable period "to tax, penalty, and interest, in that order, for the earliest period, then to tax, penalty, and interest, in that order, for the next succeeding period, until the payment is absorbed." See also *Eboli v. Commissioner,* 93 T.C. 123, 132–133 (1989); *Stone v. Commissioner,* T.C. Memo. 1984–187; Rev. Proc. 84–58, 1984–2 C.B. 501, 503. We are mindful that revenue rulings represent a statement of the Commissioner's legal position and are not considered precedents by this Court. In the case of Rev. Rul. 73–305, *supra,* however, we agree that the IRS has discretion to exercise the authority used therein.

Respondent argues that these amounts are nondeductible personal interest expenses.

Adjusted gross income is defined as gross income less certain deductions, including deductions attributable to a trade or business. Sec. 62(a)(1). A deduction is allowed for interest paid or accrued on indebtedness. Sec. 163(a). Deductions for "personal interest", however, are limited by section 163(h)(1). Section 163(h)(2) defines personal interest as including all interest expense of a taxpayer other than a corporation, except interest that falls into a category listed in that section. The first such category is: "(A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee)".[8] Section 163(h) does not directly address whether "personal interest" includes interest paid on income tax deficiencies.

We conclude that petitioners have failed to prove that the interest paid on their overdue income tax liability qualifies as interest "accrued on indebtedness properly allocable to a trade or business" of their own.[9] See *Rose v. Commissioner,* T.C. Memo. 1995–75. The interest expense at issue arose because of petitioners' unpaid and overdue 1983 Federal income tax. On this record, there has been no showing that the interest was an ordinary and necessary expense of petitioner's law practice, or of any other business carried on by petitioners.

In *Rose v. Commissioner, supra,* the taxpayer deducted as an investment interest expense amounts paid with respect to a prior year's late payment of his Federal income tax liability. The taxpayer claimed that his interest expense was primarily attributable to taxes on his distributable share of income from section 1231 gain earned by a partnership in which he was a general partner. We therein concluded that the taxpayer failed to show that the interest paid on the

---

[8] The deduction is limited to 20 percent for 1989 and 10 percent for 1990 (after which it is phased out completely). See sec. 163(d)(6)(B), (h)(5).

[9] Sec. 1.163–9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), provides that "personal interest" includes interest paid on an underpayment of individual Federal taxes, regardless of the source of the income generating the tax liability. We note that the District Court for the District of North Dakota in *Miller v. United States,* 841 F. Supp. 305 (D.N.D. 1993), declared this regulation to be invalid, although the court later concluded that the interest expense in question in that case constituted "personal" interest in any event. See *Miller v. United States,* 95–1 USTC par. 50,068 (D.N.D. 1994). Because of our holding, we need not decide the validity of this regulation, and we express no opinion with respect to that matter.

income tax liability was attributable to a trade or business of his own, or accrued on indebtedness properly allocable to such a trade or business, or accrued on indebtedness properly allocable to property that he held for investment. The interest was accordingly held to be "personal" interest.

The Court of Appeals for the Tenth Circuit, to which an appeal in this case would lie, held in *Commissioner v. Polk,* 276 F.2d 601, 602 (10th Cir. 1960), affg. 31 T.C. 412 (1958), that interest paid by an individual taxpayer on an income tax deficiency was deductible as an ordinary and necessary expense where the deficiency resulted from the taxpayer's understatement of his business income. However, the facts of *Polk* are distinguishable from the facts herein. The taxpayer in *Polk* raised and produced livestock and used an inventory accounting method that required him to value his livestock yearly. The Court of Appeals stated that because properly valuing livestock is not an exact science (i.e., qualified minds can differ), the taxpayer's underreporting of income arose because of the nature of his business and is "ordinarily and necessarily to be expected". *Id.* at 603. Thus, the interest on the deficiency was held to be an ordinary and necessary business expense. *Id.;* cf. *True v. United States,* 72 AFTR 2d 93–5661, 93–2 USTC par. 50,461 (D. Wyo. 1993) (interest on an individual's income tax deficiency attributable to his distributable share of partnership income did not attain the character of a business expense, but rather was "personal" interest), affd. per curiam without published opinion 35 F.3d 574 (10th Cir. 1994); *Miller v. United States,* 95–1 USTC par. 50,068 (D.N.D. 1994) (interest on an individual's income tax deficiency constituted "personal" interest, in the absence of proof that such deficiency resulted from circumstances typical of, and reasonably anticipated in, taxpayer's business).

Unlike the taxpayer in *Polk,* here petitioner has not made a showing that the 1983 income tax deficiency on which he paid interest arose as a normal or usual incident of his law practice, or of any other business conducted by petitioners. Indeed, the record is completely silent as to the source of income, or other circumstances, that gave rise to this income tax deficiency.[10]

---

[10] Contrary to petitioners' argument, the fact that the IRS obtained a secured interest in the receivables of petitioner's law practice, as collateral for the delinquent tax liability, does not supply a business nexus for the interest payment. Cf. *United States v. Gilmore,* 372 U.S. 39 (1963).

Thus, the portion of the adequate protection payments applied to interest constitutes personal interest, deductible only to the extent permitted by section 163(h). We have considered all of petitioners' remaining arguments on this subject and find them to be without merit.

*Issues 2 and 3. Wage Deductions, FUTA, and FICA*

The second issue is whether petitioners are entitled to deductions, in excess of the amounts allowed in the notice of deficiency, for gross wages earned by employees of petitioner's law practice.

Chapter 21, commonly referred to as FICA (secs. 3101–3128), and chapter 24 (secs. 3401–3406), respectively require that the employees' share of the FICA tax, and the employees' income tax, be withheld from wages paid to the employees.

The employer has the responsibility to report the amount of withheld taxes on a payroll tax return that must be filed every quarter. Secs. 31.6011(a)–1, 31.6071(a)–1(a), Employment Tax Regs. The Employer's Quarterly Federal Tax Return (Form 941) must be filed on or before the last day of the month following the close of each calendar quarter; i.e., April 30, July 31, October 31, January 31. Sec. 6011(a); secs. 31.6011(a)–1(a)(1), 31.6011(a)–4, 31.6107(a)–1(a), Employment Tax Regs. When the employer files a quarterly return, the employer must make full payment of the Federal employment taxes owed for that quarter. Sec. 6151; sec. 31.6151–1(a), Employment Tax Regs. Although the employer collects the taxes and is, therefore, liable for their payment, see sec. 3403, the withheld taxes are not the property of the employer, but rather are part of the wages of the employee, held by the employer in trust for the Government, *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir. 1987).

Petitioner reported the income and expenses of his law practice using the cash receipts and disbursements method. Section 1.461–1(a)(1), Income Tax Regs., provides that, under the cash receipts and disbursements method, amounts representing allowable deductions are, as a general rule, taken into account for the taxable year in which paid. Moreover, section 1.461–1(a)(3)(i), Income Tax Regs., provides:

Each year's return should be complete in itself, and taxpayers shall ascertain the facts necessary to make a correct return. The expenses,

liabilities, or loss of one year cannot be used to reduce the income of a subsequent year. A taxpayer may not take advantage in a return for a subsequent year of his failure to claim deductions in a prior taxable year in which such deductions should have been properly taken under his method of accounting. If a taxpayer ascertains that a deduction should have been claimed in a prior taxable year, he should, if within the period of limitation, file a claim for credit or refund of any overpayment of tax arising therefrom. * * *

Petitioners are entitled to deductions for the gross wages of the employees of petitioner's law practice. Respondent improperly reduced these deductions for wage withholdings. We decide this issue for petitioner.

We now turn to the third issue, which concerns the deductibility of the FUTA taxes and of the employer's portion of the FICA taxes. Secs. 3301, 3111. Petitioner incurred liability for these taxes with respect to wages paid to the employees of his law practice. On Schedule C of their tax returns, petitioners deducted these taxes for the year in which the liability accrued (i.e., the year in which the wages were paid), even though petitioner did not pay the tax until a later year. Petitioners argue that this treatment was proper and was in compliance with section 1.461–1(a)(1) and (3), Income Tax Regs. We disagree. Section 1.461–1(a)(1), Income Tax Regs., provides deductions for depreciation, amortization, depletion, and losses under sections 167, 611, and 165. Nothing in section 1.461–1(a)(3), Income Tax Regs., allows a cash basis taxpayer to deduct a tax before the year of payment. See also Rev. Rul. 74–70, 1974–1 C.B. 116 (for cash basis taxpayers, FICA and FUTA taxes are deductible for the tax year in which they are paid). Accordingly, petitioners may not deduct either the FUTA taxes or petitioner's share of FICA taxes until the year in which he paid such taxes.

*Issue 4. Section 6651(a)(1) Additions to Tax*

The fourth issue is whether petitioners are liable for section 6651(a)(1) additions to tax for filing delinquent 1988 and 1989 Federal income tax returns. Section 6651(a)(1) provides for an addition to tax in the amount of 5 percent of the amount of the tax if the failure to file is for not more than 1 month, with an additional 5 percent for each month in which the failure to file continues, to a maximum of 25 percent of the tax in the aggregate. The additions to tax are

applicable unless it is shown that the failure to file is due to reasonable cause and not due to willful neglect.

Pursuant to extensions, petitioners' 1988 and 1989 Federal income tax returns were due on October 15, 1989, and August 15, 1990, respectively. Petitioners did not file the returns until September 4, 1990. Thus, petitioners untimely filed their 1988 and 1989 Federal income tax returns. Petitioners have offered no evidence to show that the failure to file was due to reasonable cause. Accordingly, we sustain respondent's determination on this issue.

*Issue 5. Section 6653(a)(1) Addition to Tax and Section 6662(a) Penalty*

The fifth issue is whether petitioners are liable for the addition to tax for negligence under section 6653(a)(1) for 1988, and for the accuracy-related penalty for negligence under section 6662(a) [11] for 1989 and 1990.

Section 6653(a)(1) imposes a 5-percent addition to tax on the amount of the entire underpayment if *any* portion of the underpayment for that year is attributable to negligence or disregard of rules or regulations. Section 6662 imposes a 20-percent addition to tax on the amount of the underpayment due to negligence or disregard of rules or regulations. Sec. 6662(a) and (b). For purposes of both sections 6653(a)(1) and 6662(a), "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard. Secs. 6653(a)(3), 6662(c). Negligence has also been defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" *Neely v. Commissioner,* 85 T.C. 934, 947 (1985) (quoting *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 48 T.C. 168 (1964)). Petitioners bear the burden of showing that they were not negligent. Rule 142(a).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown

---

[11] The additions to tax for negligence (sec. 6653(a)), valuation overstatements (sec. 6659), and substantial understatements of tax liability (sec. 6661) were repealed for Federal income tax returns due to be filed after Dec. 31, 1989, and were replaced with an accuracy-related penalty under sec. 6662. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101–239, sec. 7721(c), 103 Stat. 2106, 2399.

that there was reasonable cause for such portion and that the taxpayer acted in good faith. Sec. 6664(c)(1). Particular facts and circumstances are examined to determine whether a taxpayer acted with reasonable cause and in good faith. Sec. 1.6664–4(b)(1), Income Tax Regs. The crucial factor is the extent of the taxpayer's effort to assess his or her proper tax liability. *Id.*

Here, there are several factors that warrant the imposition of the addition to tax for negligence and the accuracy-related penalty, except as specifically stated below. As an initial matter, it must be noted that petitioner is an attorney specializing in taxation and bankruptcy law. As such, he is held to a higher standard of care. See, e.g., *Hodges v. Commissioner,* T.C. Memo. 1993–316; *Hall v. Commissioner,* T.C. Memo. 1990–127. Second, petitioners conceded over $20,000 in unsubstantiated expenses that they deducted on the Schedules C. They provided no evidence as to the reasonableness of these erroneously claimed expenses. Third, petitioners claimed for FUTA taxes, and for the employer's portion of the FICA tax, deductions that were inconsistent with the books of petitioner's law practice.

Petitioners have failed to prove that they were not negligent, or that they otherwise acted with reasonable cause and in good faith, except with respect to their adequate protection payment deductions. Therefore, we hold that petitioners are liable for the addition to tax for negligence under section 6653(a)(1) on the entire underpayment of tax for 1988. As to the accuracy-related penalty for negligence pursuant to section 6662(a), except for that portion stemming from the adequate protection payments, we hold that petitioners are liable on the underpayment for each of the years 1989 and 1990.

*Issue 6. Section 6661 Addition to Tax*

Respondent determined that petitioners are liable for the addition to tax under section 6661(a) for 1988 as a result of a "substantial understatement of income tax".

Section 6661(a) provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of any underpayment attributable to such understatement for additions assessed

after October 21, 1986. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99–509, sec. 8002, 100 Stat. 1951; *Pallottini v. Commissioner,* 90 T.C. 498, 501–503 (1988). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6661(b)(2). An understatement is substantial if it exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000. Sec. 6661(b)(1). In general, if a taxpayer has substantial authority for the tax treatment of the item in question, or has adequately disclosed the tax treatment of the item on the return, the taxpayer may escape liability for the addition to tax with respect to that item. Sec. 6661(b)(2)(B)(i) and (ii). The Secretary may waive all or part of the section 6661 addition to tax upon a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c).

The understatement for 1988 is "substantial" in this case. Petitioners have shown no substantial authority for the positions taken on their 1988 Federal income tax return. Nor have they made any showing of reasonable cause other than with respect to the adequate protection payment deductions. Thus, we hold that petitioners are liable for the addition to tax pursuant to section 6661(a) for 1988, except for the portion stemming from the adequate protection payments.

To reflect the foregoing and concessions by the parties,

*Decision will be entered under Rule 155.*