T.C. Memo. 1996-338


UNITED STATES TAX COURT


SHELDON M. SISSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27098-93.                    Filed July 24, 1996.


<u>Sheldon M. Sisson</u>, pro se.

<u>Steven M. Roth</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notice of deficiency dated September 23, 1993, respondent determined additions to tax for petitioner's 1983 tax year as follows:

| Additions to Tax | | |
| --- | --- | --- |
| Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
| $3,351.50 | 50 percent of the interest due on $67,030 | $16,757.50 |

The issue for decision is whether petitioner is liable for these additions to tax. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1983, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Tarzana, California, at the time he filed his petition.

Petitioner is a tax attorney licensed to practice law in California and Illinois. He received his law degree from the University of Chicago Law School in 1962 and has been certified as a specialist in tax law by the California Board of Legal Specialization. From 1964 to 1974, he was employed by the Internal Revenue Service (IRS), Office of Chief Counsel, where he litigated numerous tax shelter cases. Some of these cases involved tax-motivated transactions promoted by Harry Margolis. In 1974, he served briefly as the Staff Assistant to the IRS Regional Counsel for the Western Region. Following his tenure at the IRS, he was hired as an attorney at the law firm of Levenfeld & Kantor.

Beginning in 1979, petitioner spent nearly 10 years working for tax shelter promoters. From 1979 through July of 1980, petitioner worked for Mr. Margolis, writing opinion letters, providing tax advice, and regularly meeting with representatives responsible for the foreign corporations used in Mr. Margolis' tax shelters.

In July of 1980, petitioner went to work for the Schulman Management Co., a company that promoted tax shelters and that was wholly owned by Gerald Schulman. Petitioner worked for Mr. Schulman for almost 8 years and became thoroughly familiar with the tax shelter transactions Mr. Schulman promoted. Petitioner prepared opinion letters and private placement circulars concerning these transactions. In addition, petitioner traveled to the Caribbean and Panama to meet with representatives of foreign corporations involved in Mr. Schulman's tax shelters.

Mr. Schulman organized, promoted, and syndicated approximately 478 similarly structured limited partnerships and served as the general partner of each of them. Two of these partnerships, Woodchuck, Ltd. (Woodchuck), and Wolverine, Ltd. (Wolverine), were formed while petitioner was employed by Mr. Schulman. During 1982 and 1983, Woodchuck sold 33 limited partnership interests, raising $2,700,000 in capital contributions. Petitioner contributed $121,010 for a limited partnership interest in Woodchuck and $96,790 for a limited partnership interest in Wolverine.

Mr. Schulman promoted the partnerships by representing that each limited partnership interest would be entitled to an interest deduction in the first year equal to the partner's cash capital contributions. The purported interest deductions for the first year were generated through a circular transfer of funds among several entities, including foreign entities in Panama and the Netherlands Antilles. The transactions occurred between December of 1982 and December of 1983.

On August 22, 1983, the IRS and Mr. Schulman executed a preliminary agreement entitled "SETTLEMENT PLAN AGREEMENT". The agreement's "RECITALS" section stated:

> 2.1 IRS is presently auditing SCHULMAN'S individual tax returns (IRS Form 1040) for the years 1977 through 1982. Additionally, IRS intends to audit SCHULMAN'S 1983 individual tax return (IRS Form 1040).
>
> *       *       *       *       *       *       *
>
> 2.4 IRS and SCHULMAN desire to amicably settle all questions relating to SCHULMAN'S individual tax returns and the deductions taken by the investors in connection with their investment in the SCHULMAN Partnerships. * * *
>
> 2.5 This document is intended to be an agreement in principle establishing the concepts upon which a formal settlement agreement will be drafted. Both the IRS and SCHULMAN shall exercise the utmost good faith in attempting to achieve the final settlement of the matters described herein. Nevertheless, SCHULMAN and the IRS acknowledge that the concepts established hereunder may result in unforeseen consequences which may render settlement impossible.

2.6 The parties have discussed a settlement plan which consists of Phase I and Phase II as follows:

(a) Phase I--This phase involves (i) the execution of this Settlement Plan Agreement establishing the principles upon which a final settlement agreement will be achieved and (ii) actual verification of tax due in accordance with the principles established under the Settlement Plan Agreement. Verification shall be conducted on an expedited basis.

(b) Phase II--Phase II shall involve (i) drafting and execution of a final settlement agreement, (ii) communication to investors of the settlement proposal by SCHULMAN, (iii) implementation of the Partnership adjustments upon acceptance by the investors, (iv) final determination of SCHULMAN promoter income, and (v) formation of * * * [a specified] Trust * * *.

The "SETTLEMENT PLAN" section of the agreement stated:

3.1 IRS shall allow each investor to deduct seventy percent (70%) of the claimed Investor First Year Deduction. * * * The disallowed portion of the Investor First Year Deduction [thirty percent (30%)] shall be deducted by each investor ratably over the term of the Schulman Partnership Long Term Notes * * *.

The "CONDITIONS" section of the agreement added:

4.2 * * * This Settlement Plan Agreement is intended to be used for settlement purposes only and both IRS and SCHULMAN agree that the Agreement, discussions held prior to and in connection with the Agreement, and all schedules and materials previously submitted by SCHULMAN to the Appeals Office (before the date of the execution of this Agreement) in connection with the settlement discussions shall not be used in any manner whatsoever in any administrative or court proceeding. * * *

Petitioner reviewed the agreement during the negotiation process and was thoroughly familiar with its terms and conditions.

The agreement was intended to constitute a preliminary understanding of the parties. To summarize, it stated that (1) in Phase II the parties would draft a final and binding settlement agreement and (2) the investors would then be entitled to deduct, in the first year of the partnerships' operation, 70 percent of the expenses generated by the partnerships' transactions. The remaining 30 percent would be disallowed in the first year, but investors would be entitled to deduct this amount ratably in subsequent years. Mr. Schulman and the IRS, however, never executed a final and binding settlement agreement.

On October 12, 1984, petitioner filed his 1983 Federal income tax return. The return claimed $162,460 of loss deductions from Schedule E (Supplemental Income Schedule) attributable to petitioner's allocable share of income and loss from investments in Wolverine and Woodchuck.

In Wolverine, Ltd. v. Commissioner, T.C. Memo. 1992-669, affd. without published opinion 39 F.3d 1190 (9th Cir. 1994), we disallowed Wolverine and Woodchuck's claims to interest deductions on their 1983 returns, on the grounds that the partnerships' transactions were tax motivated and lacked economic substance. Petitioner litigated that case on behalf of the partnerships as a partner other than the tax matters partner.

On September 23, 1993, respondent issued a notice of deficiency to petitioner. In the notice, respondent determined

that a deficiency of $67,030 in petitioner's income tax for 1983, resulting from an adjustment of petitioner's share of the disallowed partnership items of Woodchuck and Wolverine, was subject to an addition to tax for negligence of $3,351.50 (plus 50 percent of the interest due on $67,030). Respondent further determined that the deficiency was subject to a $16,757.50 addition to tax for substantial understatement of tax liability.

OPINION

I.   Addition to Tax for Negligence Under Section 6653(a)(1)

Section 6653(a) imposes an addition to tax for underpayments attributable to negligence or disregard of rules or regulations. The term "negligence" is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct, and petitioner has the burden of proving that it is erroneous. Rule 142(a); Goldman v. Commissioner, 39 F.3d 402, 406 (2d Cir. 1994), affg. T.C. Memo. 1993-480.

In essence, we must decide whether petitioner was reasonable in taking deductions relating to his investment in Wolverine and Woodchuck. We conclude that he was not.

This Court has held that a taxpayer who is a tax attorney will be held to a higher standard of reasonableness than a person

without such expertise. Tippin v. Commissioner, 104 T.C. 518, 534 (1995). Petitioner in this case specialized in tax shelter planning and litigation and had over 20 years of experience. In addition, he had litigated tax shelter cases for the IRS and possessed extensive knowledge of tax shelters similar to those at issue in this case.

Petitioner makes two arguments in support of his contention that he was reasonable in taking the deductions. First, petitioner argues that we should conclude he was not negligent, because he researched and wrote an opinion letter analyzing the transactions. Petitioner concluded in his opinion letter that the deductions relating to the transactions would be permissible under the Code. The transactions involved the circular transfer of funds among related entities (both domestic and foreign) for the sole purpose of generating tax deductions. In Wolverine, Ltd. v. Commissioner, supra, we concluded that the transactions lacked economic substance. At the time petitioner claimed the deductions, case law uniformly indicated that transactions lacking economic substance would not be respected for tax purposes. See, e.g., Gregory v. Helvering, 293 U.S. 465, 469 (1935); Bercy Indus., Inc. v. Commissioner, 640 F.2d 1058, 1062 (9th Cir. 1981), revg. 70 T.C. 29 (1978). Petitioner has failed to establish that he, as an experienced tax practitioner, was reasonable in claiming a distributive share of the deductions

this Court disallowed in <u>Wolverine</u>.  As a result, his first argument is without merit.

Second, petitioner contends that he was reasonable in taking the deductions because he was duly diligent in determining whether the agreement was binding.  In essence, petitioner asks us to believe that it was reasonable to ignore the transactions' lack of economic substance and to rely on a conditional, precursory agreement that was not applicable to the year in issue.  We decline to do so.  While petitioner contends that he believed and continues to believe that the agreement was binding, his opinion letter indicates that he was fully aware that the agreement by its terms was not binding and did not apply to 1983, the year in issue.  Petitioner's opinion letter stated:

> Even though as a matter of law <u>each taxable year stands by itself and the Internal Revenue Service is entitled to change its position</u>, since you have reached an agreement <u>in principle</u> with the Internal Revenue Service <u>for the years 1977-1982</u> for your partnerships and since the planning for the years 1978-1982 is substantially similar to the planning for 1983 and since <u>it is anticipated</u> that the Internal Revenue Service will apply the principles of the settlement by 1983, my opinion that the significant tax benefits of the investment are likely to be realized is substantially strengthened.  [Emphasis added.]

Petitioner also claims to have been duly diligent in that he obtained outside counsel who advised him that the agreement was binding.  Petitioner did not, however, produce any documentation in support of this contention.  We are not required to, and in this case do not, accept the taxpayer's uncorroborated testimony. See, e.g., <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

Consequently, we conclude that petitioner did not exercise the care of a reasonably prudent tax lawyer and is therefore liable for the addition to tax for negligence.

## II. Addition to Tax for Substantial Understatement Under Section 6661(a)

In the case of a substantial understatement, section 6661(a) provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to such understatement.[1] An "understatement" is the excess of the amount of tax required to be shown on the return over the amount actually shown on the return. Sec. 6661(b)(2)(A). An understatement is "substantial" (in the case of a noncorporate taxpayer) if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $5,000. The amount of the understatement generally is reduced by the portion of the understatement attributable to (1) the tax treatment of an item if there was substantial authority for such treatment, or (2) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B).

To prove that substantial authority exists in the case of a tax shelter, section 6661(b)(2)(C)(i)(II) provides that the taxpayer must establish that he reasonably believed that the

---

[1] This rule is applicable to returns due in 1984 where an assessment is made after Oct. 21, 1986. Pallottini v. Commissioner, 90 T.C. 498 (1988).

chosen tax treatment was more likely than not the proper one. Petitioner bears the burden of establishing that respondent's determination was erroneous.  <u>Cluck v. Commissioner</u>, 105 T.C. 324, 340 (1995).

Respondent determined that the understatement was substantial.  Petitioner does not dispute this point.  Thus, petitioner must establish that the understatement should be reduced if he is to avoid imposition of the addition to tax for substantial understatement.

Petitioner's sole argument is that he reasonably relied on the agreement, which he implies constitutes substantial authority.  Petitioner, however, has not cited, nor have we found, any authority that suggests that this agreement constitutes substantial authority.  Petitioner was not reasonable in relying on the agreement for purposes of the addition to tax for negligence, nor has he established that he reasonably believed that taking the deductions relating to his 1983 tax shelter investment was more likely than not correct. Consequently, we conclude that petitioner is liable for the addition to tax for substantial understatement.

We have considered petitioner's other arguments and found them to be without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.